# BROWN *v.* UNITED STATES.

CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE
SEVENTH CIRCUIT.

No. 33.   Argued October 14, 1927; reargued January 4, 1928.—Decided February 20, 1928.

1. The .provisions of the Sherman Anti-Trust Act creating criminal and civil liability against unincorporated associations, necessarily carry the implication that they may be proceeded against by their common names to enforce the liability.   P. 141.
2. In grand jury proceedings under the Sherman Act, a subpœna *duces tecum* without an *ad testificandum* clause may issue to an · unincorporated association and be served upon the officer of the association who has possession of the documents.   P. 142.
3. A subpœna *duces tecum* commanding an association of manufacturers to produce all letters and telegrams, or copies thereof, passing between it and its predecessors, their officers and agents, and the several members of such association, and the officers and agents of such members, during a specified period of five and one-half months, relating to the manufacture and sale of a specified class of goods, and particularly with reference to certain specified meetings and activities and aspects of the trade involved, *held* not too broad. P. 142.
4. That the subpœna in this case was not objectionable is established by the fact that, prior to its issue, the documents called for had been identified and produced, without undue interference with the affairs of the association, under another subpœna containing the same description.   P. 143.
5. To support a claim that documents called for by a subpoena will tend to incriminate him, the witness must produce them for inspection by the court, and his refusal to do so in itself constitutes a failure to show reasonable ground for not complying with the writ. P. 144.
6. In the absence from the record of anything but the witness's mere assertion to show that his claim of privilege against production of documents was justified, it may be assumed, upon review of a judgment committing him for contempt, that, by inspection of the documents or by other facts, a want of substance in the claim was disclosed to the District Court.   P. 145.

Affirmed.

REVIEW of a judgment of the District Court sentencing Brown for criminal contempt in refusing to comply with a subpoena *duces tecum.* The case first reached this Court upon a certification of questions from the Circuit Court of Appeals. After argument, the entire record was ordered up and the case was reargued.

*Mr. Robert N. Golding,* with whom *Mr. Weymouth Kirkland* was on the brief, for Brown.

The outstanding difference between an unincorporated association and a corporation, is that the former, like a partnership, is not a separate entity and possesses no individuality. It cannot, as such, own property; it cannot enter into contracts; it cannot sue in the name its members have assumed for business purposes; nor can it, in the absence of statute, generally be sued by such name. *Society of Shakers* v. *Watson,* 68 Fed. 730; *Moskal* v. *New Era Commercial Ass'n,* 228 Ill. App. 278; *Pickett* v. *Walsh,* 192 Mass. 572; *In re Waters of Willow Creek,* 119 Ore. 487; *Brown* v. *Protestant Episcopal Church,* 8 F. (2d) 149; *Cousin* v. *Taylor,* 115 Ore. 472; *Thurmand* v. *Cedar Spring Baptist Church,* 110 Ga. 816; *Tucker* v. *Eatough,* 186 N. C. 504; *State* v. *Stock Exchange,* 211 Mo. 181.

The law has not been changed by the *Hale* and *Coronado* cases. This Court has not endowed unincorporated associations with individuality. The reasoning of the *Hale* case does not apply to this case. *Hale* v. *Henkel,* 201 U. S. 43; *Wilson* v. *U. S.,* 221 U. S. 361; *U. S.* v. *Brasley,* 268 Fed. 59; *Karges Furniture Co.* v. *Amalgamated Union,* 165 Ind. 421. The *Coronado* case is based upon the familiar theory of presence by representation. *United Mine Workers* v. *Coronado Coal Co.,* 259 U. S. 344; *Beatty* v. *Kurtz,* 2 Pet. 566; *Spaulding* v. *Evenson,* 149 Fed. 713, affd., 150 Fed. 517; *Nat'l Harness Mfrs. Ass'n,* v. *Federal Trade Comm.,* 268 Fed. 705; *Iron Molders Union* v. *Allis-Chalmers Co.,* 166 Fed. 45; *Bobe* v.

*Lloyds,* 10 F. (2d) 731; *United States and Cuba, etc.,* v. *Lloyds,* 291 Fed. 889.

Corporate records may be reached by subpoena, whether the custodian thereof be another corporation, a partnership, or an individual. *U. S.* v. *Invader Oil Corp.,* 5 F. (2d) 715; *Woodworth* v. *Old Second Nat'l Bank,* 154 Mich. 459; *Martin* v. *D. B. Martin Co.,* 10 Del. Ch. 211.

Corporations and individuals may become members of unincorporated associations, in which case, the books and records belong to the individuals as well as to the corporations. *Houston* v. *Dexter & Carpenter,* 300 Fed. 354; *Quitman Oil Co.* v. *McRee,* 18 Ga. App. 128; *Salem-Fairfield Ass'n* v. *McMahan,* 78 Ore. 477; *Wilson* v. *Carter Oil Co.,* 46 W. Va. 469; *Amusement Syndicate Co.* v. *Martling,* 108 Kans. 798; *Moore* v. *Hillsdale County Co.,* 171 Mich. 388; *Browning* v. *Cover,* 108 Pa. 595; 14a C. J. 293.

A subpoena would compel Brown to produce his own documents, for use against himself in a criminal proceeding, in violation of his constitutional rights. *Ballman* v. *Fagin,* 200 U. S. 186; *U. S. Brasley,* 268 Fed. 59; *Internal Revenue Agent* v. *Sullivan,* 287 Fed. 138.

The subpoena was too broad. *Hale* v. *Henkel,* 201 U. S. 43; *In re American Sugar Refining Co.,* 178 Fed. 109; *Rawlins* v. *Halls-Epps Co.,* 217 Fed. 884; *Ex parte Jaynes,* 70 Cal. 638; *Ex parte Gould,* 60 Tex. Cr. R. 442; *American Car Co.* v. *Water Co.,* 221 Pa. 529; *State* v. *Davis,* 117 Mo. 614.

No showing of materiality was made. *Miller* v. *Mutual Life Ass'n,* 139 Fed. 864; *U. S.* v. *Terminal Ass'n,* 154 Fed. 268; *Dancel* v. *Goodyear Shoe Machinery Co.,* 128 Fed. 753; *State* v. *Wurdeman,* 176 Mo. App. 540; *Kullman, Salz & Co.* v. *Superior Court,* 15 Cal. App. 276.

*Assistant to the Attorney General Donovan,* with whom *Solicitor General Mitchell* and *Messrs. Rush H. Williamson* and *Ralstone R. Irvine,* Special Assistants to the Attorney General, were on the brief, for the United States.

The subpoena was not invalid because directed at a voluntary association. *Wheeler* v. *United States,* 226 U. S. 478; *United Mine Workers* v. *Coronado Coal Co.,* 259 U. S. 344. Compiled Laws of Mich., 1915, §§ 12363 and 12432.

There was not an unreasonable search and seizure in the sense that the subpoena was too broad or too indefinite. *Hale* v. *Henkel,* 201 U. S. 43; *Consolidated Rendering Co.* v. *Vermont,* 207 U. S. 541; *Wilson* v. *United States,* 221 U. S. 361.

Brown failed to sustain the burden of showing justification for refusal to produce by failing to show that he was a member of the association and that its members were not corporations. *Wilson* v. *United States, supra; Hale* v. *Henkel, supra.* See also *Essgee Co.* v. *United States,* 262 U. S. 151; *Grant* v. *United States,* 227 U. S. 74; *Wheeler* v. *United States,* 226 U. S. 478.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

This case came here from the circuit court of appeals upon a certificate submitting questions upon which instruction was desired. After argument upon the certificate, it was ordered that the entire record be certified to this Court so that the whole matter in controversy might be considered.

The questions to be determined upon that record arise upon the following facts: The district court for the northern district of Illinois on July 13, 1925, issued its subpoena, addressed to the National Alliance of Furniture

Manufacturers, commanding it to appear before the grand jury at a time and place named and produce:

"All letters or copies of letters, telegrams or copies of telegrams, incoming and outgoing, passing between the National Alliance of Furniture Manufacturers and its predecessor, the National Alliance of Case Goods Associations, their officers and agents, and the several members of said National Alliance of Furniture Manufacturers and its predecessor, the National Alliance of Case Goods Associations (including corporations, partnerships, and individuals, and their respective officers and agents) during the period from January 1, 1922, to June 15, 1925, relating to the manufacture and sale of case goods, and particularly with reference to—

"(a) general meetings of Alliance

"(b) zone meetings of Alliance members

"(c) costs of manufacture

"(d) grading of various types of case goods

"(e) issuing new price lists

"(f) discounts allowed on price lists

"(g) exchanging price lists

"(h) maintaining prices

"(i) advancing prices

"(j) reducing prices

"(k) rumors of charges of price cutting

"(l) discounts, terms and conditions of sale, etc.

"(m) curtailment of production

"(n) the pricing of certain articles or suits of furniture by W. H. Coye

"(o) cost bulletins

"(p) intention of W. H. Coye and A. C. Brown to attend furniture markets or expositions at Jamestown, N. Y., Grand Rapids, Mich., Chicago, Ill., and New York City, N. Y., and meetings of members held prior to and during said furniture markets or expositions

"(q) conditions obtaining at various furniture markets or expositions at Jamestown, N. Y., Grand Rapids, Mich., Chicago, Ill., and New York City, N. Y.,

"(r) manufacturers maintaining a fair margin of profit between cost prices and selling prices."

The subpoena contained no *ad testificandum* clause.

Service of this subpoena was made upon Arthur C. Brown, Secretary of the Alliance, who appeared in person before the grand jury; refused to say anything concerning the matters set forth in the subpoena unless he should first be subpoenaed and sworn; produced and read to the grand jury a written statement in which, after reciting the service of the subpoena upon him, he said that there was no such person or entity as the National Alliance of Furniture Manufacturers capable of being served with subpoena or of appearing in answer to one, and that he appeared in deference to the official position of the grand jury to inform them of that fact. He declined to say whether his refusal to obey the subpoena was because to do so would incriminate him in connection with his private and personal affairs. Counsel for the Government informed him that the requirements of the subpoena were not with reference to his private or personal affairs but concerned him only as he was connected with the affairs of the Alliance. The grand jury presented Brown to the district court as a contumacious witness and requested that steps be taken to compel him forthwith to comply with the requirements of the subpoena.

To this presentment, Brown filed an answer admitting service of the subpoena upon him, his appearance in person before the grand jury, and the making of the written statement above referred to. He further stated that the Alliance was a voluntary organization of furniture manufacturers, and not a corporation, either *de jure* or *de facto;* that the matter then under investigation by the grand

jury was the same matter as had been investigated by a previous grand jury, which had returned an indictment in which he, Brown, was named as a defendant; that prior to the issue of the subpoena in question, a subpoena *duces tecum* had been served upon him directed to and commanding him to produce the same documents; that in answer thereto he appeared before the grand jury and brought with him the documents so requested, but declined to answer questions propounded unless sworn as a witness; that, thereupon, he was excused from further attendance upon the grand jury. He further answered that " said organization being a voluntary one and not a corporation," to compel him in response to the subpoena set forth to produce documents in his possession would be to compel him to submit to an unlawful seizure and to produce evidence against himself, in violation of Amendments IV and V of the federal Constitution; that said subpoena failed to show that the documents described were important or material; that it was a blanket command to produce all letters or copies of letters and telegrams sent to or received from a large number, to-wit, 192 persons during a period of more than three years, and called for many documents obviously harmless and of no evidentiary value; and that said subpoena was not a bona fide attempt to obtain evidence, but constituted a fishing expedition, undertaken without knowledge whether or not he had in his possession evidence desired by the United States or the grand jury, but undertaken in the hope that evidence might be discovered which could be used against him on trial of the pending indictment or under a new one.

After a hearing, the court held that no sufficient excuse in law had been shown, and ordered Brown, then present in court, forthwith to appear before the grand jury and produce the evidence called for in the subpoena, whether the grand jury saw fit to administer an oath to him or not.

Subsequently, Brown again appeared before the grand
jury and, being asked to produce the documentary evi-
dence called for in the subpoena, refused to do so except
upon condition that he should be subpoenaed and sworn.
He was again presented to the district court as a contu-
macious witness, and as for a criminal contempt for the
last mentioned refusal to comply with the requirements
of the subpoena.  Upon this presentment, the court ad-
judged Brown guilty of contempt and sentenced him to
imprisonment for thirty days.

The contentions on Brown's behalf are—

(1) The subpoena was a nullity because directed to an
unincorporated association; (2) it was invalid because too
broad and indefinite; (3) the order of the district court
compelled Brown to produce his own papers and thereby
submit to an unlawful seizure and to incriminate himself
in violation of his constitutional rights.

1. The general rule is that in the absence of statute an
unincorporated association is not a legal entity which may
be sued in the name of the association.  Many of the
states have adopted statutes expressly providing that such
associations may be sued.  But an express provision is
not indispensable.  Such a suit may be maintained in
virtue of a necessary implication arising from statutory
provisions although the statute does not in terms so
provide.  Here, such an implication arises from the pro-
visions of the Sherman Anti-Trust Act, c. 647, 26 Stat.
209.  The act denounces as illegal every contract, com-
bination and conspiracy in restraint of interstate and
foreign trade, and provides that every person who shall
make any such contract or engage in any such combina-
tion or conspiracy shall be guilty of a misdemeanor.  Sec-
tion 8 of the act provides that the word person shall be
deemed to include corporations and *associations* existing
under or authorized by the laws of the United States, of
any territory, state or foreign country.  That the Alliance

was an association within the meaning of this section and, therefore, subject to the provisions of the act is clear. The provisions of the act creating criminal and civil liability against such an association necessarily carry the implication that it may be proceeded against by its common name to enforce the liability. Consequently, for a violation of the Anti-Trust Act, it may be prosecuted, indicted and convicted, and judgment rendered against it and satisfied by execution out of its assets. *United Mine Workers* v. *Coronado Co.,* 259 U. S. 344, 385–391, 392; *Dowd* v. *United Mine Workers of America,* 235 Fed. 1, 5–6. To say that an association thus may be prosecuted, indicted, convicted, fined and judgment satisfied, and that appropriate process may be issued and executed to these ends but that a subpoena *duces tecum* without an *ad testificandum* clause (*Wilson* v. *United States,* 221 U. S. 361, 372) cannot in the course of the very proceeding go against it by its common name, would be to utter an absurdity. While the subpoena *duces tecum* directed to the officer in possession of the documents would have been good, and perhaps preferable, the matter is not one of substance, but purely of procedure, and we entertain no doubt that the subpoena here directed to the association and served on such officer is valid.

2. In *Hale* v. *Henkel,* 201 U. S. 43, here cited in support of Brown's second contention, this Court held that a subpoena *duces tecum* requiring a witness to produce all understandings, contracts and correspondence between a corporation named and six different companies, as well as all reports made and accounts rendered by them from the date of the organization of the corporation, and all letters received by the corporation since its organization from more than a dozen different companies, was too sweeping to be regarded as reasonable. The limitation in respect of time embraced the entire period of the corporation's existence and there was no specification in re-

spect of subject matter; and this Court said that if the return had required the production of all the books, papers and documents found in the office of the corporation, it would scarcely be more universal in its operation, or more completely put a stop to the business of the company. The subpoena here under consideration is very different. It specifies a reasonable period of time and, with reasonable particularity, the subjects to which the documents called for relate. The question is ruled, not by *Hale* v. *Henkel,* but by *Consolidated Rendering Co.* v. *Vermont,* 207 U. S. 541, 553–554, and *Wheeler* v. *United States,* 226 U. S. 478, 482–483, 489.

But the form of the subpoena aside, it appears from Brown's own statement that, prior to the issue of the subpoena in question, a subpoena *duces tecum* had been directed to and served upon him personally, commanding him to produce the same documents, and that in answer thereto he had appeared before the grand jury with them. This is equivalent to a demonstration that the description contained in the subpoena was sufficient to enable Brown to know what particular documents were required and to select them accordingly. Having produced them once without difficulty and without undue interference with the affairs of the association, so far as appears, there is no reason why he should not produce them again in response to another subpoena identical in terms. See *Lee* v. *Angas,* L. R. 2 Eq. 59, 64; *Starr* v. *Mayer & Co.,* 60 Ga. 546, 549.

The probable materiality of the documents is sufficiently indicated by the descriptions of their subject matter contained in the subpoena.

3. Whether Brown's relation to the association or to the documents in question was such as to entitle him under any circumstances to assert the constitutional privilege, we do not find it necessary to inquire. All other matters aside, it is impossible for us to say, upon the record before

us, that the claim of such privilege was sustained. Upon Brown's appearance before the grand jury in response to the subpoena, he made no claim of the privilege, but insisted only that there was no such person or entity as the National Alliance capable of being served with a subpoena or of appearing in answer to one. This notwithstanding the fact that his attention was directed to the subject of self-incrimination. Upon his presentment to the district court as a contumacious witness, he answered, among other things, that to compel him to produce the documents set forth in the subpoena would be to submit to an unlawful seizure and to produce evidence against himself. There was a hearing, but the record fails to disclose what was before the court for its consideration upon that hearing. It appears only that the court held that no sufficient excuse for Brown's conduct had been shown, and he was ordered to again appear before the grand jury and produce the documents called for, whether that body saw fit to administer an oath to him or not. Appearing before the grand jury, he again refused, except on condition that he should be subpoenaed and sworn. Thereupon, he was adjudged by the district court to be in contempt for his failure to comply with its order, and sentenced to imprisonment.

Whether the papers were produced for the inspection of the court does not appear, but it may well be that they were and that from an examination of them it appeared that the claim of privilege was wholly without merit. In any event it was Brown's duty to produce the papers in order that the court might by an inspection of them satisfy itself whether they contained matters which might tend to incriminate. If he declined to do so, that alone would constitute a failure to show reasonable ground for his refusal to comply with the requirements of the subpoena. *Consolidated Rendering Co. v. Vermont, supra,* pp. 552–553. As very pertinently said by the Court of

Appeals of Kentucky in *Commonwealth* v. *Southern Express Co.,* 160 Ky. 1, 3: ". . . the individual citizen may not resolve himself into a court and himself determine and assert the criminating nature of the contents of books and papers required to be produced." See also, *Ex parte Irvine,* 74 Fed. 954, 960; *United States* v. *Collins,* 145 Fed. 709, 712; *Mitchell's Case,* 12 Abb. Pr. 249, 260–261. And see generally, *Blair* v. *United States,* 250 U. S. 273, 282.

From the foregoing we may properly assume in support of the judgment below that either from an inspection of the papers or from other facts appearing there was disclosed to the district court a want of substance in Brown's claim of privilege. Certainly there is nothing in the record, beyond Brown's mere assertion, that affirmatively shows or tends to show that the claim was well founded.

*Judgment affirmed.*