## Ex parte EDELSTEIN.

Circuit Court of Appeals, Second Circuit.
February 4, 1929.

Manton, Circuit Judge, dissenting.

Louis D. Frohlich, of New York City, for the motion.

Paul N. Turner, of New York City (Justus Sheffield and Emily Holt, both of New York City, on the brief), opposed.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge (after stating the facts as above). Both sides agree that the plaintiff cannot appeal from the decree dismissing the bill in part, and, as he has not discontinued the suit against Gillmore, Mitchell, and Dullzell, the first question is whether we have jurisdiction to issue a writ of mandamus. It is abundantly settled that we have, when it is necessary to protect our appellate jurisdiction, whether or not the cause be already before us on appeal (D., L. & W. R. R. v. Rellstab, 276 U. S. 1, 48 S. Ct. 203, 72 L. Ed. 439; McClellan v. Carland, 217 U. S. 268, 30 S. Ct. 501, 54 L. Ed. 762; In re Watts, 214 F. 80 [C. C. A. 2]; Goldwyn Pictures Corporation v. Howells Sales Co., 287 F. 100 [C. C. A. 2]); but in the case at bar the District Court has already acted, and its decision will in season come before us for review, so that it might well be argued that the only service of the writ would be to expedite an appeal. Moreover, mandamus will not usually go when there is another remedy. On the other hand, the court has refused to entertain the case at all, and its action does prevent our consideration of the merits which will not be before us on appeal from the decree. At any rate the Supreme Court in Re Hohorst, 150 U. S. 653, 14 S. Ct. 221, 37 L. Ed. 1211, took the second view under precisely similar circumstances to those at bar, and the decision, though several times cited, has never been questioned. While the power depended upon section 342 of title 28 of the Code (28 USCA § 342), it was ancillary to the appellate jurisdiction of the court (Insurance Co. v. Comstock, 16 Wall. 258, 21 L. Ed. 493); and, although our own power must rest upon section 377, we do not doubt that, if our appellate jurisdiction be involved, that section covers instances in which the Supreme Court would protect its own jurisdiction under section 342. We think, therefore, that we must decide the question presented to the District Court.

The doctrine that a corporation has a suppositious citizenship from the state of its incorporation, regardless of those of its shareholders, was by no means apparent at the outset (Bank of the U. S. v. Deveaux, 5 Cranch, 61, 3 L. Ed. 38; Commercial & R. R. Bank v. Slocomb, 14 Pet. 60, 10 L. Ed. 358), was first tentatively put forward only in 1844 (Louisville R. R. Co. v. Letson, 2 How. 497, 11 L. Ed. 353), and did not become settled law under the guise of a presumption until 1853 (Marshall v. B. & O. R. R. Co., 16 How. 314, 14 L. Ed. 953). It was never extended to unincorporated associations, whose aggregate nature has always been recognized, not only when organized under the laws of a state (Chapman v. Barney, 129 U. S. 677, 9 S. Ct. 426, 32 L. Ed. 800), but even when there considered "quasi corporations" (Great Southern, etc., Co. v. Jones, 177 U. S. 449, 20 S. Ct. 690, 44 L. Ed. 842), or when consisting of a board of appointed officials with public duties (Thomas

v. Trustees of Ohio State University, 195 U. S. 207, 25 S. Ct. 24, 49 L. Ed. 160). See, also, Taylor v. Weir, 171 F. 636 [C. C. A. 3]; Spencer v. Patey, 243 F. 535 [C. C. A. 2]; Wise v. Brotherhood of Locomotive Firemen and Enginemen, 252 F. 961, 965 [C. C. A. 8].

In view of these authorities, the plaintiff does not dispute that he could not have sued in the District Court before United Mine Workers v. Coronado Co., 259 U. S. 344, 42 S. Ct. 570, 66 L. Ed. 975, 27 A. L. R. 762, and rests his suit upon a supposed change in the law made by that case. The decision did not involve the point, since the substantive jurisdiction of the District Court rested upon the anti-trust laws, and the question of diverse citizenship could not come up. The argument runs, however, that, since it was there held that an unincorporated association could be sued by the service of process upon its officers, it necessarily follows that it must be treated as a legal person and a citizen, and, if so, the only citizenship ascribable to it must be that of the state of its organization. It does not in the least follow, because the citizenship of the shareholders of a corporation is presumed to be that of the state of organization (which was at least the original form of the doctrine), that the same presumption must obtain in the case of looser associations. The law has for long imposed liability upon members of an associated group because of acts done in execution of the common purposes. Usually, indeed, all must be sought out and sued individually to obtain redress, though in most states even this has been enough modified by statute to reach the common funds of partnerships. United Mine Workers v. Coronado reached the same result without the aid of any statute, at least so far as to subject the common funds to suit, and apparently also to enforce individual liabilities, but the contrivance was not necessarily of a presumptive citizenship of the members, or of a fictitious personality itself capable of citizenship. Russell v. Central Labor Union (D. C.) 1 F.(2d) 412. Every member of an association consents to the execution of the common plan; that is the origin of his liability for wrongs committed in its realization. To just what consequences that consent shall subject him is a matter of more or less; to make him and all the members suable through some of their number was alone necessary. The law has more shifts than one, and has used an implied consent before in not dissimilar situations. Lafayette Insurance Co. v. French, 18 How. 404, 15 L. Ed. 451.

We do not, therefore, think that there is even an intimation that the Supreme Court meant to change the doctrine that such associations are aggregations, the political status of whose members is as little enlarged as though they were partners in an ordinary commercial or industrial enterprise. Indeed, in the case of corporations themselves, in recent times the tendency has been rather to emphasize their aggregate character than their fictitious personality, an exotic in any case in English law.

We have not to decide whether the fact that 29 of the members of the association were citizens of other states would alone have been ground for dismissal. An alien may select a federal court in which to sue a citizen of any state, and it may well be true that, as between the plaintiff and citizens of other states than New York, the question is one, not of jurisdiction, but of venue, which is covered by United Mine Workers v. Coronado. But concededly an alien may not sue an alien in a federal court, and the 33 alien members of the association constituted an insurmountable obstacle to substantive jurisdiction. Recourse to a federal court, though granted by the Constitution, depends upon statute, and Congress need not confer it to its full extent. Even though it be possible to include the case at bar within the constitutional grant, Congress has not done so. The result is not to deny justice to the plaintiff, who can sue the association in the state courts; it goes no further than to prevent access to a tribunal of limited powers whose jurisdiction, for reasons good or bad, has not been thought appropriate to such controversies.

Motion denied.

MANTON, Circuit Judge (dissenting). It is properly held in the opinion of the majority of the court, that the plaintiff's remedy is by mandamus. In re Hohorst, 150 U. S. 653, 14 S. Ct. 221, 37 L. Ed. 1211; § 377, U. S. Code (28 USCA § 377).

The hesitancy to attribute citizenship to a corporation for purposes of jurisdiction, as resulting from the grant of incorporation, was very marked in the early decisions. Hope Insurance Co. v. Boardman, 5 Cranch, 57, 3 L. Ed. 36; Bank of United States v. Deveaux, 5 Cranch, 61, 3 L. Ed. 38; Sullivan v. Fulton Steamboat Co., 6 Wheat. 450, 5 L. Ed. 302; Commercial & R. Bank v. Slocomb, 14 Pet. 60, 10 L. Ed. 354. But in Marshall v. Baltimore & Ohio R. R., 16 How. 314, 14 L. Ed. 953, the Supreme Court finally held that the presumption arising from the habitat of the corporation in the place of its crea-

tion became conclusive as to the residence and citizenship of those who used the corporate name and exercised the faculties conferred by it, and that an allegation that a corporate body was created by the act of the state Legislature was a sufficient averment that the real defendant was a citizen of the state which created it. And in Doctor v. Harrington, 196 U. S. 579, 25 S. Ct. 355, 49 L. Ed. 606, it is pointed out that the corporation as such had its legal existence, separate from the shareholders, and it could sue and be sued. Perhaps this hesitancy justifies pausing now before declaring an unincorporated association to be a citizen of the state under whose statute it operates for jurisdictional purposes. Strictly speaking, a corporation has no citizenship. Nevertheless, it partakes of the attributes of citizenship by virtue of its organization, and in that respect its recognition is now well settled, where diversity of citizenship is brought into question.

By reason of much progress made since the early cases referred to, and the nationwide extensions of unincorporated bodies and their treatment as separate entities for collective bargaining and dealing, new and different reasons exist for considering them as having a residence and citizenship. These reasons should distinguish this case from Chapman v. Barney, 129 U. S. 677, 9 S. Ct. 426, 32 L. Ed. 800, and Great Southern Fireproof Hotel Co. v. Jones, 177 U. S. 449, 20 S. Ct. 690, 44 L. Ed. 842. It is well expressed in United Mine Workers v. Coronado Coal Co., 259 U. S. 344, 391, 42 S. Ct. 570, 66 L. Ed. 975, 27 A. L. R. 762, where the Supreme Court had before it an unincorporated association of persons in a labor union similar to the one named as the defendant herein. There it was held that the labor union unincorporated would be treated as an artificial person capable of suing and being sued. The court said:

"Though such a conclusion as to the suability of trade unions is of primary importance in the working out of justice, and in protecting individuals and society from possibility of oppression and injury in their lawful rights from the existence of such powerful entities as trade unions, it is after all in essence and principle merely a procedural matter. * * * And the only question is whether when they have voluntarily, and for the purpose of acquiring concentrated strength and the faculty of quick unit action and elasticity, created a self-acting body with great funds to accomplish their purpose, they may not be sued as this body, and the funds they have accumulated may not be made to satisfy claims for injuries unlawfully caused in carrying out their united purpose."

Of what state, then, can this artificial person, "capable of suing and being sued," be regarded a citizen for the purpose of testing the diverse citizenship which gives jurisdiction to the federal court? The question was not squarely presented in the Coronado Case, because there the jurisdiction rested upon a violation of the Clayton Act (38 Stat. 730). The complaint sufficiently sets forth that this unincorporated association was organized, and exists and transacts business under the General Association Laws of the state of New York; that its principal place of business is in the city and state of New York, within the Southern district; its membership consists of practically all the performers, players, actors, and actresses appearing and playing upon the American performing stage; that as such a labor union it possesses a charter from the American Federation of Labor, and operates as a labor union under this charter; that its officers, president, second vice president, treasurer, executive secretary, recording secretary, and assistant executive secretary, all are citizens and residents of the state of New York. Plaintiff is a resident of Holland. An unincorporated association under a state law, as its other brother, an incorporated company, would seem to have an equal claim to a status as a separate entity and citizenship, separate from its members as a corporation, is regarded separately from its shareholders. In the Coronado Case, the court said (reviewing the federal legislation dealing in such unincorporated associations):

"In this state of federal legislation, we think that such organizations are suable in the federal courts for their acts, and that funds accumulated to be expended in conducting strikes are subject to execution in suits for torts committed by such unions in strikes. * * * *"

In New York state an unincorporated association is regarded as a person under the General Business Law (section 17-c [Consol. Laws, c. 20]) and the Negotiable Instruments Law (section 2 [Consol. Laws, c. 38]), for it includes a body of persons, whether incorporated or not. Section 239 of the Personal Property Law (Consol. Laws, c. 41) makes the same reference to two or more having a joint or common interest. The Internal Revenue Act refers to the term "corporation" as including associations, joint-stock companies, and insurance companies. Act of 1926; 26 USCA § 1262, subd. 2. We recognized the right to maintain a suit against an unin-

corporated association, of fire underwriters in Bobe v. Lloyds, 10 F.(2d) 730, and there we pointed out that the Supreme Court, in Hecht v. Malley, 265 U. S. 144, 44 S. Ct. 462, 68 L. Ed. 949, defined association as a term used throughout the United States to signify a body of persons united without a charter, but upon the methods and forms used by unincorporated bodies for the prosecution of some enterprise. What was said in Brown v. United States, 276 U. S. 134, 48 S. Ct. 288, 72 L. Ed. 500, where the service of a subpœna upon an unincorporated association was resisted, is pertinent, for there it was held that a subpœna duces tecum directed to the association was valid, and must be obeyed, if served upon an officer.

Congress has shown no intent to restrict jurisdiction in matters of legislation and supervision pertaining to labor unions. Federal control has grown constantly. Illustrations of this in its various forms are referred to in the Coronado Case. The Revenue Act of 1928 (26 USCA § 2103) further illustrates how numerous and important factors unincorporated associations have become in the life of our times. In dealing with exemptions from corporate tax, reference is made to some 17 of this class and character of unincorporated associations. Moreover, if the provisions of the Clayton Act and the other statutes enacted for supervision of labor problems are to be effectively enforced, and labor unions remain unincorporated, more reason exists for regarding them as separate entities, and suable within a district as citizens of the state where their principal place of business is carried on and where their officers reside.

The motion for a writ of mandamus should be granted. I therefore dissent.