## UNITED STATES v. GOLDSTEIN.

### No. 380.

Circuit Court of Appeals, Second Circuit.

June 26, 1939.

## DAKIN v. UNITED STATES.

### No. 4510.

Circuit Court of Appeals, Fourth Circuit.

June 30, 1939.

L. P. Summers, of Abingdon, Va., for appellant.

Howard C. Gilmer, Jr., Asst. U. S. Atty., of Pulaski, Va.

Charles H. Tuttle, of New York City, for appellant.

Rudolph Halley, Asst. U. S. Atty., of New York City (John T. Cahill, U. S. Atty., of New York City, on the brief), for the United States.

Before SWAN, CLARK, and PATTERSON, Circuit Judges.

CLARK, Circuit Judge.

This is an appeal from an order adjudging the defendant, a doctor, in contempt of court and sentencing him to six months in jail for failure to produce before a Grand Jury his records concerning his professional treatment of one Samuel Weinberg. The contempt order, issued under 28 U.S.C. A. § 385, was based upon defendant's failure to comply with a subpoena duces tecum, an order of the Grand Jury, and an order of the District Court, each of which required him to produce these records before the Grand Jury.

If, as the court found, there was a contumacious failure to comply with the subpoena and these orders, the power of the court to punish, as was done here, is clear. Brown v. United States, 276 U.S. 134, 48 S.Ct. 288, 72 L.Ed. 500; United States v. McGovern, 2 Cir., 60 F.2d 880, certiorari denied, 287 U.S. 650, 53 S.Ct. 96, 77 L.Ed. 561. The defendant's claim is that during the course of the proceedings his records, consisting of cards from his filing cases relating to Weinberg, were misplaced and lost. The Government concedes that had this been all that appeared, the court might properly have accepted this excuse, however unsatisfactory it was to the prosecutor. But there was much more in the case below.

The proceedings before the Grand Jury involved an investigation of claimed frauds upon insurance companies by Weinberg. Weinberg has now been indicted, charged with obtaining disability insurance after he had been informed that he was suffering from tuberculosis, and thereafter claiming and receiving disability benefits from insurance companies. During the Government's investigation, evidence was discovered showing that the defendant, Dr. Goldstein, had sent Weinberg, who is his stepbrother, to a public tuberculosis clinic in August, 1932, under a fictitious name, that he and Weinberg were informed by the clinic that Weinberg had tuberculosis, that Weinberg had applied for and received a disability insurance policy in October, 1932, and that thereafter the defendant treated Weinberg and certified to the insurance companies that Weinberg had been suffering from various ailments, but concealed facts which would enable them to discover Weinberg's true medical history. The defendant admits treatment of Weinberg from December 16, 1932, to the middle of 1937 and certification to the insurance companies as claimed, but has denied discovery of or prescription for tuberculosis in Weinberg's case.

In January, 1938, the defendant was questioned by an Assistant United States Attorney about the Weinberg matter. He then testified to various examinations of Weinberg and said that he kept a summary record of his findings and the history of the patient's illness, summarizing the case every eight, ten, or twelve visits or so, and that he had these reports in his office. Nearly a year later, on December 8; and again on December 30, 1938, the defendant was summoned before the Grand Jury, and testified that he had such records. He stated that he had commenced treating Weinberg on December 16, 1932; that he knew the date, because he had "looked it up"; that he had refreshed his memory about Weinberg's symptoms (which he then gave in some detail) from his records "in the office"; and that he had "the record of the summary of the case in general, just the symptoms and the treatment, etc., as concerns his condition." Thereafter, on January 10, 1939, the records were subpoenaed, with the statement attached that he might respond by sending his records to the United States Attorney by registered mail if he so desired. In reply, defendant wrote the Assistant United States At-

torney that he did not have any such records; that the only records he had had, had been memoranda made out from time to time on prescription slips when he attended Weinberg at his home; and that he had used these slips in filling out insurance forms, but had then thrown them away. He repeated these statements before the Grand Jury in February, 1939, and said he had kept "absolutely no record whatever" except these prescription slips which he had thrown away after filling out the insurance forms. Some of his earlier statements about his records were then read to him. About two weeks later he again testified before the Grand Jury, and this time he told a new story, in an effort to make his previous stories consistent. He now said that he did jot down memoranda which he threw away after filling out insurance forms, and also that in August, 1937, he had made from memory and a few memoranda a card showing a summary of the case which he used in answering a letter from an insurance company asking for details; that this card was the record he had mentioned earlier; and that he had looked for it, but could not find it now. Later in the proceedings before the court below in March, this letter was produced and contained what the court aptly termed "a very scientific statement" of the case, giving blood counts and other details impossible of recollection without the aid of a substantial record. Confronted with this letter, defendant admitted he had not written it from memory.

■ In the face of these three separate stories which the defendant told about his records in the Weinberg case, we cannot say that the District Court erred in believing only the first story and in discrediting the other two. The first story is more consistent with the ordinary practice of doctors, and apparently with the defendant's own practice in other cases. The Government offered two filing boxes of the defendant showing extensive histories in over three hundred cases; and defendant's successive attempts to meet this evidence by asserting that he did not make records of patients treated at home, except where a contagious disease was involved, and that he did not keep such records of adults, only of children—in each instance shown to be false by the records themselves—did not strengthen his position. Neither the prescription slips nor the alleged summary and its subsequent disappearance were mentioned by the defendant in his earlier testimony or in his letter to the Assistant United States Attorney, and there is every reason to believe these stories to be a pure fabrication. There is an obvious motive for the defendant's conduct; he wanted to protect Weinberg and himself when he discovered that the records were very important in the Weinberg case, and that, indeed, they might furnish a basis for similar proceedings against himself. Since, according to the first and only credible story told by the defendant, the records were in his possession on December 30, 1938, the inference that he still had them eleven days later when the subpœna was served upon him is entirely reasonable. See Wigmore on Evidence, § 382; In re Arctic Leather Garment Co., 2 Cir., 89 F.2d 871, 872. The defendant either still has or controls the records, or is impeding justice by not explaining what really happened to them.

■ The defendant claims that he was prejudiced by the attitude and remarks of the court throughout the hearing on the charges of contempt. Thus, the court stated at the outset that if the defendant "repeats what he said before the Grand Jury I won't believe it." The court had read the defendant's testimony before the Grand Jury, and this statement and others of similar character seem to us under the circumstances justifiable admonitions to the defendant to make truthful and adequate explanation of his conduct. The defendant did not, however, heed the warnings thus given.

Affirmed.