**In re UNITED SHOE MACHINERY CORPORATION et al.**

No. 7262.

District Court, D. Massachusetts.

Jan. 24, 1947.

John L. Hall, Conrad W. Oberdorfer and Charles P. Curtis, Jr. (of Choate, Hall & Stewart), all of Boston, Mass., for Movants.

Grant W. Kelleher and C. Worth Rowley, both of Boston, Mass., for the United States.

SWEENEY, District Judge.

Motions to quash have been filed by each of the above named movants. Each of them has been served with a subpoena duces tecum, returnable February 10, 1947, before a Grand Jury, directing them to bring with them "the material designated in the annexed list". The annexed list comprises 14 pages of designations.

The United Shoe Machinery Corporation is the owner of all of the stock of the other movant corporations. In addition thereto, the United Shoe Machinery Corporation, which will hereinafter be referred to as "United", owns 100% of the voting power in about 35 other corporations situated all over the world, and at least 50% of the voting power in another 25 corporations situated both in the United States and in foreign countries. Broadly, the business of United is manufacturing and dealing in, either by sale or by lease, machinery for the manufacture and repair of footwear, and certain materials and supplies for servicing such machinery. It maintains service offices throughout the United States in 44 different cities, and has 30 manufacturing plants situated throughout the United States. It maintains files in all of its manufacturing plants and in many of its service offices.

The movants allege that the subpoenas in question are so broad and sweeping as to compel them to deliver up practically their entire files from all their offices and plants to the Grand Jury. They urge that this will call for the surrender of approximately 60,000,000 separate documents, and that the weight of these documents would be about 550 tons. They further allege that the surrender of all of these papers, gathered from all over their business empire, to be left with the Grand Jury for an indeterminate length of time, would cause a complete stoppage of their business and resulting injury, not only to the corporations, but to the public.

An order for the production of books and papers may constitute an unreasonable search and seizure within the Fourth Amendment to the Constitution. Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652; American Tobacco Co. v.

United States, 6 Cir., 147 F.2d 93. In Hale v. Henkel, supra, the United States Supreme· Court held that the validity of a subpoena duces tecum, on attack, must depend upon the reasonableness of the order. In Brown v. United States, 276 U.S. 134, 48 S.Ct. 288, 72 L.Ed. 500, the Court recognized the rule laid down in Hale v. Henkel, supra, but held the Brown case to be not covered by it. Applying the test of reasonableness to the subpoenas duces tecum in question, all of which are identical, I find that they are violative of the Fourth Amendment to the Constitution' in that they are so broad and sweeping as to compel deliverance of practically all of the corporations' files, for an indefinite period of time to the Grand Jury. This is not a reasonable order.

I have only to refer to one or two matters contained in the list to demonstrate how wide and sweeping is the call for material, and how justified the corporations are in asserting that they will have to deliver practically all of their files to the Grand Jury. Paragraph *I* of the annexed list reads as follows: "The original and all amendments to the charters, agreements and articles of association, agreements and articles of partnership, certificates of incorporation, constitutions, by-laws and rules and regulations of The Corporation and *of all related concerns*". (Italics mine.) If "all related concerns" meant only the other 8 corporations, or some of the 70 other corporations which are alleged to be owned and controlled by the United Shoe Machinery Corporation, we would have one proposition to consider which, in and of itself, might be open to attack. But appended to the first page of the annexed list is a definition of what the Government understands the words "related concerns" to mean. That definition says that the words "related concerns" shall be deemed to include:

"(a) All businesses, firms, concerns and corporations, whether foreign or domestic, which, at any time since January 1, 1920, directly or indirectly, have controlled The Corporation, or to whose control The Corporation has been subject, or which have owned more than 5% of the voting stock of The Corporation, or which have shared in the profits of The Corporation or of any other related concern, or which have had a financial interest in The Corporation.

"(b) * * *".

Thus, we see that, in addition to seeking the charters, etc., of the movants and possibly 70 other corporations owned and controlled by United, it also includes the following, ranged over a period of 26 years:

1. Concerns which have controlled The Corporation.
2. Concerns to whose control The Corporation has been subject.
3. Concerns which have owned more than 5% of the voting stock of The Corporation.
4. Concerns or persons who have shared in the profits of The Corporation.
5. Concerns or persons who have shared in the profits of any other related concern.
6. Concerns which have had a financial interest in The Corporation.

Thus, "related concerns" would seem to include not only those which have controlled The Corporation, but any person or corporation who has owned more than 5% of the voting stock of The Corporation, and any person who has shared in any profit of The Corporation (such as a stockholder receiving a dividend). The last classification, that is, anyone who has had a financial interest in The Corporation, is certainly a broad, sweeping, and very vague description. It certainly cannot refer to stockholders since they are covered in the prior classification. This description is so vague as to be meaningless.

If the charters, and lists of officers and directors and shareholders, were the only things which were required to be furnished as to "related concerns", it might be said that such an order in the subpoena was valid because it presupposed compliance with the subpoena, within their ability to comply, but the offending· words "related concerns" and the definition thereof continue throughout the entire annexed list and are so broad and sweeping as to compel the ruling that they constitute an un-

reasonable search and seizure in violation of the Fourth Amendment to the Constitution.

Another demand which is so sweeping and broad as to render it invalid arises under Paragraphs V, VI, and VII, of the annexed list, wherein reference is made to Schedules A, B, and C, attached to the annexed list. Schedule A refers to the list of products with which the subpoena is concerned; Schedule B refers to the list of subject matters in 45 categories, and Schedule C is a list of about 150 concerns, and ends up with three additional designations:

(1) Customers of The Corporation and related concerns. * * *

(2) Competitors of The Corporation and related concerns. * * *

(3) Predecessors, successors, parents, subsidiaries and affiliates of any of the listed concerns.

While the forms of Schedules A, B, and C, seem to designate with particularity certain matters pertaining to The Corporation's business which they want to investigate, a careful reading of the Schedules shows that they are, in fact, all-inclusive. For example, Schedule A, listing the products made by the movants with which the Government is concerned, is as follows:

1. Shoe machinery and components thereof;

2. Leather working machinery and components thereof;

3. Tanning machinery and components thereof;

4. Sewing machinery and components thereof;

5. Leather finishing machinery and components thereof;

6. Material used in the operation of shoe machinery, including but not limited to shoe machinery parts, abrasives, lubricants, awls, needles, lasts and dies; and machinery for the manufacture thereof;

7. Material used in the fabrication and finishing of leather and shoes, including but not limited to leather, rubber, adhesives, waxes, inks, dyes, finishes, nails, tacks, slugs, wire, thread, shoe boxes, eyelets, heels, laces, soles, insoles, welts, linings, shanks, counters, box toes and felts; and machinery for the manufacture thereof.

This list, in fact, designates everything that the movants manufacture. Similarly, Schedule B, which lists 45 subject matters, commencing with cartels and ending with "Alleged violations of the antitrust laws":— while in form this is a list of subject matters to be investigated, it, nevertheless, covers about every conceivable angle of attack under the antitrust laws. Schedule C, which purports to designate about 150 concerns, nevertheless includes every concern with which the corporations have ever done business by reason of the inclusion of the last three items referring to customers, competitors, predecessors, successors, parents, subsidiaries and affiliates of any of the listed concerns.

While I recognize that it is the duty of a lower court not to take any unnecessary initiatory action which would be likely to impede investigations or obstruct the impartial administration of justice, nevertheless I feel that these subpoenas are so wide and sweeping as to show on their face a violation of the Fourth Amendment to the Constitution. The annexed list is permeated with the invalid broad and sweeping demands, and no cutting-away or pruning of the bad parts is possible. In reaching the decision to quash these subpoenas, I have considered only the matters referred to above, and specifically have not taken into consideration the magnitude of the investigation sought nor the long period of time covered by the proposed investigation.

The motions to quash the subpoenas are allowed, and the subpoenas are quashed.