**In re GRAND JURY INVESTIGATION, (LOCAL 542—INTERNATIONAL UNION OF OPERATING ENGINEERS).**

**Misc. No. 74–238.**

United States District Court,
E. D. Pennsylvania.

Sept. 20, 1974.

John F. Penrose, Thomas A. Bergstrom, Asst. U. S. Attys., Philadelphia, Pa., for plaintiff.

Abraham E. Freedman, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

DITTER, District Judge.

Presently before the court is the motion of Local 542 of the International Union of Operating Engineers to quash a federal grand jury subpoena duces tecum calling for the production of "all original books and records of above-referred to organization for the period January 1, 1972 through June 30, 1974."[1] The Union contends that (1) in order to enforce the subpoena, the Government must state the purpose and function of the grand jury proceeding and demonstrate the relevance and necessity of each document sought; and (2) the production of these documents would effectively halt the business of the Union, since it would be unable to function with-

out its books and records. For the reasons expressed herein, the motion of the Union will be granted with respect to all documents not included within a specifically enumerated category, but otherwise refused.

■ At the outset, I am guided by the principle that a grand jury "is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited . . . by doubts whether any particular individual will be found properly subject to an accusation of crime." United States v. Calandra, 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561 (1974); Blair v. United States, 250 U.S. 273, 282, 39 S.Ct. 468, 471, 63 L.Ed. 979 (1919). As the Supreme Court stated in Branzburg v. Hayes, 408 U.S. 665, 700–701, 92 S.Ct. 2646, 2666, 33 L.Ed.2d 626 (1972), and reaffirmed in United States v. Calandra, supra, 414 U.S. at 344, 94 S.Ct. at 618:

[T]he investigation of crime by the grand jury implements a fundamental governmental role of securing the safety of the person and property of the citizen . . ."

The role of the grand jury as an important instrument of effective law enforcement necessarily includes an investigatory function with respect to determining whether a crime has been committed and who committed it . . . 'When the grand jury is performing its investigatory function into a general problem area . . . so-

---

1. The subpoena further provided that [s]uch records shall include, but are not limited to the following:

Constitution and By-laws: Minutes and Resolutions of the Board of Trustees, regular and special meetings; Minutes of General Membership Meetings; Minutes of Executive Board Meetings; all books or original entry, receipts, dues and income journals, expense and disbursement journals and ledgers, general journals, general and subsidiary ledgers as well as all supporting vouchers, invoices and receipts; all bank account statements, cancelled checks, check stubs and duplicate deposit tickets; all records of savings accounts and pass books;

all records relating to the rental or leasing of safety deposit boxes; all records, data, correspondence and memoranda pertaining to loans obtained and to loans made; all records relating to real estate transactions; purchase or sale of stock, bonds or other marketable securities; audit resports; all payroll records including I.R.S. Forms W–2 and 1099; all records pertaining to trustees, officers and employees expense vouchers and accounts with supporting documentation; and the current union membership list, including addresses, and all lists reflecting the membership as it existed through the period from 1/1/72 to 6/30/74.

ciety's interest is best served by a thorough and extensive investigation.' Wood v. Georgia, 370 U.S. 375, 392 [82 S.Ct. 1364, 1374, 8 L.Ed.2d 569] (1962). A grand jury investigation 'is not fully carried out until every available clue has been run down and all witnesses examined in every proper way to find if a crime has been committed.' United States v. Stone, 429 F.2d 138, 140 (C.A. 2 1970). Such an investigation may be triggered by tips, rumors, evidence proferred by the prosecutor, or the personal knowledge of the grand jurors. Costello v. United States, supra, 350 U.S. at 362 [76 S.Ct. 406 at 408]. It is only after the grand jury has examined the evidence that a determination of whether the proceeding will result in an indictment can be made   .   .   .   .

■ In what I view as a response to the Union's first objection,[2] the Government stated that the grand jury's investigations into the financial aspects of the Union related to possible violation of three federal statutes:

(1) interference with commerce by threats or violence, 18 U.S.C. § 1951;

(2) restrictions on payments and loans to employee representatives, labor organizations, officers and employees of labor organizations, and to employees or groups or committees of employees, 29 U.S.C. 186; and

(3) the fiduciary responsibility of officers of labor organizations, 29 U.S.C. § 501.

I am persuaded that the materials specifically categorized in the attachment to the subpoena all are relevant to an investigation of this type,[3] especially in light of the policy favoring robust and extensive grand jury inquiries articulated by the Court in United States v. Calandra, supra, and Branzburg v. Hayes, supra.

■ Turning to whether the subpoena must be quashed because it is "unreasonable or oppressive",[4] it is well settled that "a grand jury's subpoena *duces tecum* will be disallowed if it is 'far too sweeping in its terms to be regarded as reasonable' under the Fourth Amendment." United States v. Calandra, 414 U.S. at 346, 94 S.Ct. at 619; Hale v. Henkel, 201 U.S. 43, 76, 26 S.Ct. 370, 380, 50 L.Ed. 652 (1906). Nevertheless only in an extreme case of a clear showing of unreasonableness, of abuse of power by the Government, will a court be induced to quash an otherwise valid grand jury subpoena on the ground that it is overly burdensome. In re Corrado Brothers, Inc., 367 F.Supp. 1126, 1132 (D.Del.1973); Petition of Borden Co., 75 F.Supp. 857, 863 (M.D.Ill.1948).

■■ Although no definitive set of criteria have been listed for determining reasonableness, three interrelated elements appear critical:

(1) the subpoena must command production only of materials relevant to the investigation;

(2) the subpoena must specify with some particularity the materials to be produced; and

(3) the subpoena must call for materials covering only a reasonable period of time.

United States v. Gurule, 437 F.2d 239, 241 (10th Cir. 1970); In re Corrado Brothers, Inc., supra 367 F.Supp. at 1129. The mere volume of matter sought is not alone a sufficient ground upon which to quash a subpoena. In re Corrado Brothers, Inc., supra at 1132. In In re Horowitz, 482 F.2d 72 (2d Cir. 1973), cert. denied 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed. 2d 86, a subpoena duces tecum called for the production before a grand jury of "the contents of all three file cabinets" at a specified address in connection with an investigation of certain allegations of

---

2. Compare In re Grand Jury Proceedings, 486 F.2d 85, 93 (3d Cir. 1973).

3. I indicated at oral argument on this motion, for instance, that the local's constitution and by-laws would seem relevant to an inquiry into a possible breach of the fiduciary responsibility of its officers.

4. Rule 17(c), Fed.R.Crim.P.

fraud. The court held that the subpoena would be limited so that, in the case of any paper dated prior to the year in which the project to which the alleged frauds related was commenced, the Government would be required to make a minimal showing in light of other evidence obtained that the paper might be relevant, but that with respect to papers dated thereafter, the burden would be placed on their owners to satisfy the district court that that particular category of documents could have no conceivable relevance to any legitimate object of investigation. Similarly in Application of Nadelson, 353 F.Supp. 971 (S.D.N.Y.1973), a grand jury subpoena duces tecum calling for the production of "[a]ll the records relating to service of process required to be kept . . . pursuant to New York City Department of Consumer Affairs Rules and Regulations relating to process servers from April 1, 1970 to the present" was held not to be quashable on the ground that it was unreasonably broad. See also *In re Corrado Bros.*, supra.

■■ The Union urges that the Government must demonstrate its need for each piece of evidence sought. I disagree. The "relevance" demanded of a subpoena issued in the context of a grand jury investigation must be measured by less exacting standards than a subpoena issued during the course of a trial, since a grand jury "does not depend on a case or controversy to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." United States v. Morton Salt Co., 338 U.S. 632, 642–643, 70 S.Ct. 357, 363–364, 94 L.Ed. 401 (1950). As the Supreme Court said in sustaining a *subpoena duces tecum* issued by the House Com-

mittee on Un-American Activities calling for the production of "all records, correspondence and memoranda pertaining to the organization of, the affiliation with other organizations and all monies received or expended by the Civil Rights Congress" for purposes of an investigation into the organization's alleged connections with Communist activity:

It is not reasonable to suppose that the Subcommittee knew precisely what books and records were kept by the Civil Rights Congress, and therefore the subpoena could only "specif[y] * * * with reasonable particularity the subjects to which the documents * * * relate." Brown v. United States, 276 U.S. 134, 143, 48 S.Ct. 288, 290, 72 L.Ed. 500. The call of the subpoena for "all records, correspondence and memoranda" of the Civil Rights Congress relating to the three specified subjects describes them "with all the particularity the nature of the inquiry and the [Subcommittee's] situation would permit," Oklahoma Press Publishing Co. v. Walling, supra, 327 U.S. 186 at page 210, n. 48, 66 S.Ct. 494 at page 506, 90 L.Ed. 614. "[T]he description contained in the subpoena was sufficient to enable [petitioner] to know what particular documents were required and to select them accordingly," Brown v. United States, supra, 276 U.S. at page 143, 48 S.Ct. at page 290.

McPhaul v. United States, 364 U.S. 372, 382, 81 S.Ct. 138, 144, 5 L.Ed.2d 136 (1960).[5]

■ The Government has recognized that its subpoena may well be "burdensome and inconvenient." As a result of conferences between counsel for the Government and for the union, it has been agreed, as will be set forth more fully in

---

5. The court will, of course, decline to enforce an administrative subpoena issued for the purpose of developing a criminal case, see, e. g., Donaldson v. United States, 400 U.S. 517, 532–533, 91 S.Ct. 534, 543, 27 L.Ed. 2d 580 (1971); Reisman v. Caplin, 375 U.S. 440, 449, 84 S.Ct. 508, 513, 11 L.Ed.2d 459 (1964); In re Grand Jury Proceedings, 486 F.2d 85, 91 (3d Cir. 1973), or a grand jury subpoena whose purpose is to gather information for an already pending criminal indictment or information, see, e. g., id.; Beverly v. United States, 468 F.2d 732, 743 (5th Cir. 1972). There has been no suggestion that the present subpoena has such an inappropriate purpose, however.

my order, that certain documents essential to the day-to-day activities of the union will remain in the Government's custody for only a very limited time. The union's second objection consequently is moot.

I conclude, therefore, that the attachment to the subpoena duces tecum satisfies the requisite elements of relevance, specificity, and reasonableness in time, and that it is not unreasonable or oppressive. All the items enumerated in the attachment arguably bear on union financial activities governed by the statutes named by the Government. Moreover, the description contained in the attachment is sufficient to enable the union to know what particular items are required and to select them accordingly. McPhaul v. United States, supra, 364 U.S. at 382, 81 S.Ct. at 144; Brown v. United States, 276 U.S. 134, 143, 48 S.Ct. 288, 290, 72 L.Ed. 500 (1928). Finally, the time period covered by the documents sought, two and one-half years, is quite reasonable when measured by *In re Horowitz*, supra.