**In re UNITED SHOE MACHINERY CORPORATION.**

Misc. Civil Nos. 7306, 7307.

District Court, D. Massachusetts.
June 25, 1947.

John L. Hall, Claude R. Branch, and Choate, Hall & Stewart, all of Boston, Mass., for plaintiff.

Grant W. Kelleher, Sp. Asst. Atty. Gen., and C. W. Rowley, Jr., Alfred Karsted, and E. M. Feeney, Sp. Attys., all of Boston, Mass., for the Government.

HEALEY, District Judge.

The United Shoe Machinery Corporation, hereinafter referred to as United, has filed motions to quash two subpoenas duces tecum in the grand jury proceedings.

On May 22, 1947, United was served with a subpoena duces tecum, returnable May 23, 1947, directing it to produce:

"1 — Your Treasurer's two notebooks which show your stockholdings in other companies and are otherwise known as the active and inactive black books.

2 — The following papers of your Terms Committee:

(a) Terms proposals since January 1, 1945;

(b) Terms recommendations since January 1, 1945.

3 — Your Program Committee's program reports since January 1, 1945.

4 — Your Lasting-Heeling Department's outside machine installation reports and supplementals so-called, including both active reports and removals files."

On May 15, 1947, United was served with another subpoena duces tecum returnable May 27, 1947, directing it to produce the "material designated in the annexed list, marked Exhibit A." This subpoena calls only for documents located in the Commonwealth of Massachusetts. In each of 5 numbered paragraphs, it calls for "all minutes, reports, interoffice communications, and intra-company documents prepared by or on behalf of United" during a specified period in each case, and "all correspondence passing between United * * *" and a person, concern or concerns, specified in each numbered paragraph, during the same period of time, relating to matters set out in lettered subparagraphs in each case.

The matters set out in the various subparagraphs are not identical in each case, but generally and variously relate to the organization of the concern in question, its invention, development and manufacture of machinery, its competitive activity in the manufacture and distribution of machinery, the settlement of patent infringements suits brought against it by United, its contracts relating to or leases, assignments or transfers of patents negotiated with United, its interchange of securities with United and/or its dissolution or merger with United.

The person or concerns referred to in each numbered paragraph and the period during which the documents sought were made are as follows:

1 — Alex E. Little and the Little Shoe Company from January 1, 1920 to January 1, 1933.

2 — Reece Shoe Machinery Company and Reece Buttonhole Company from January 1, 1925 to January 1, 1937.

3 — Blake Shoe Machinery Company, Atlas Tack Company, Godfrey A. Hymes and his representatives or the representatives of his estate from January 1, 1920 to January 1, 1936.

4 — Singer Sewing Machine Company, Hamel Shoe Machinery Company, Conlin Shoe Machinery Company, and Montreal Shoe Machinery Company, from January 1, 1920 to May 15, 1947.

5 — International Shoe Company and General Shoe Machinery Company from January 1, 1920 to January 1, 1931.

The movant objects to both subpoenas on the following grounds:

1. Compliance would deprive it of its property without due process of law in violation of the Fifth Amendment.

2. The subpoenas constitute an unlawful and unreasonable search and seizure in violation of the Fourth Amendment.

3. Compliance would be unreasonable and oppressive in violation of the Federal Rules of Civil and Criminal Procedure, 28 U.S.C.A. following section 723c.

4. Compliance in and of itself and more particularly when added to the burden already undertaken and incurred by United in furnishing the Grand Jury with a large amount of material would seriously interfere with its business.

5. They call for papers and records which are not reasonably necessary for an investigation by the Grand Jury and compliance would involve an unreasonable burden and expense upon the corporation.

6. They require compliance at an unreasonably and oppressively early date.

7. They constitute later or alias subpoenas and are thus improperly issued.

In addition, the movant contends that the subpoena issued May 14, 1947 is (1) "too general, broad, ambiguous and indefinite in its terms and too extensive in time to be reasonable", thus making compliance oppressive; and (2) it does not sufficiently specify or designate the documents to be produced and thereby calls for the exercise of judgment and discretion in the selection of the documents to be produced.

### Discussion

■ That an order for production of books and papers may constitute an unreasonable search and seizure within the Fourth Amendment to the Constitution, was decided in Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652. The court there stated that the test of validity to be applied in each case was the test of reasonableness.

There followed a number of seemingly conflicting opinions as to what constituted reasonableness under varying circumstances.

As a result, Justice Rutledge in Oklahoma Press Publishing Company v. Walling, Adm'r, 327 U.S. 186, 208, 66 S.Ct. 494, 505, 90 L.Ed. 614, 166 A.L.R. 531, restated the subpoena power and its constitutional limitations as follows:

"Without attempt to summarize or accurately distinguish all of the cases, the fair distillation, in so far as they apply merely to the production of corporate records and papers in response to a subpoena or order authorized by law and safeguarded by judicial sanction, seems to be that the Fifth Amendment affords no protection by virtue of the self-incrimination provision, whether for the corporation or for its officers; and the Fourth, if applicable, at the most guards against abuse only by way of too much indefiniteness or breadth in the things required to be 'particularly described,' if also the inquiry is one the demanding agency is authorized by law to make and the materials specified are relevant. The gist of the protection is in the requirement, expressed in terms, that the disclosure sought shall not be unreasonable.

"As this has taken form in the decisions, the following specific results have been worked out. It is not necessary, as in the case of a warrant, that a specific charge or complaint of violation of law be pending or that the order be made pursuant to one. It is enough that the investigation be for a lawfully authorized purpose, within the power of Congress to command. * * * The requirement of 'probable cause, supported by oath or affirmation' literally applicable in the case of a warrant is satisfied, in that of an order for production, by the court's determination that the investigation is authorized by Congress, is for a purpose Congress can order, and the documents sought are relevant to the inquiry. Beyond this the requirement of reasonableness, including particularity in 'describing the place to be searched, and the persons or things to be seized,' also literally applicable to warrants, comes down to specification of the documents to be produced adequate, but not excessive, for the purposes of the relevant inquiry. Necessarily, as has been said, this cannot be reduced to formula; for relevancy and adequacy or excess in the breadth of the subpoena are matters variable in relation to the nature, purposes and scope of the inquiry."

■ In the instant case, there can be no question concerning the power of a grand jury to subpoena corporate records for the purpose of their investigations. Cases too numerous to mention have affirmed that power.

The only questions, therefore, to be determined are whether the documents ordered to be produced are relevant to the grand jury's investigation, whether they

are described with sufficient particularity and are adequate but not excessive.

▮ The scope of a grand jury investigation is necessarily broad, since it embraces not only a determination whether an illegal monopoly has been established during a period within the Statute of Limitations, but also whether a monopoly, established before the period covered by the statute, has been illegally maintained within the statutory period. Patterson v. United States, 6 Cir., 222 F. 599.

We, therefore, find that subpoenas duces tecum have been approved even though they order the production of documents relating to a period prior to the period covered by the statute. Cf. In re American Medical Ass'n, Chicago, Ill., D.C., 26 F. Supp. 58; In re Grand Jury Investigation, D.C., 33 F.Supp. 367; Norcross v. United States, 9 Cir., 209 F. 13.

However, in its investigation of acts and practices prior to the statutory period, the grand jury necessarily places a much heavier burden on the corporation ordered to produce documents and records relating to those earlier corporate activities. Hence, courts have held that subpoenas requiring the production of documents made over a long period of time are unreasonable and oppressive. United States v. Medical Society, D. C., 26 F.Supp. 55; In re American Sugar Refining Company, C.C., 178 F. 109.

It is to be noted, however, that in those cases the courts have emphasized the lack of particularity of the subpoena and that there has been no showing of relevancy.

No doubt a subpoena ordering the production of old records or old documents places a far heavier burden on the corporation than does an order requiring the production of recent ones. Old files must be searched and documents unfamiliar to present employees must be examined. The meaning of old memoranda is not clear and the time consumed is great.

▮ Such a search should not be required in a general manner or for slight cause. The documents demanded by a subpoena covering a long period of time in the past should, therefore, set forth the documents demanded with greater particularity, and should not order the production of documents without some showing that they contain information reasonably relevant to the subject matter of the investigation.

▮ Judged by these standards, the subpoena dated May 21, 1947, points out with particularity the documents ordered. The only question, therefore, is as to their relevancy to the subject-matter under investigation—probable violations of the Sherman Act, 15 U.S.C.A. §§ 1-7, 15 note:

1 — The stockholdings of United in other corporations in the same industry are material to such an inquiry, and should be presented, even though the Treasurer's notebooks cover a long period of time.

2 — The proposals and recommendations of the Terms Committee allegedly form the basis for the acceptance or rejection of certain terms in the leases of machinery by United to its customers. While it may be true that United has already furnished the grand jury with all the terms of its leases, and that many of the proposals and recommendations sought have not been adopted by United, it is likely that these documents may shed some light on the question as to whether or not certain terms were adopted as a part of a plan to create or maintain a monopoly in the industry. It seems reasonable that the grand jury should have access to these proposals and recommendations.

3 — The Program Committee reports since January 1, 1945 purportedly contain recommendations of that committee concerning the advisability of United acquiring patents on inventions. Since control of the industry under investigation depends largely on control of patents, it seems logical that the grand jury should have an opportunity to investigate whether it was the aim of this leading corporation in that industry to acquire patents for the purpose of creating or maintaining an illegal monopoly. It seems reasonable to assume that the reports sought to be produced would aid the grand jury in determining this question, and that these reports should be produced as ordered.

The fact that the Program Committee reports contain highly confidential matters, does not necessarily make an examination

of them by the grand jury unreasonable or oppressive, nor does such examination violate or circumvent rule 15 of the Patent Office, 35 U.S.C.A.Appendix, as argued in United's brief.

The proceedings before the grand jury are secret and the oath taken by the jurors affords United adequate protection against possible disclosure of any corporate secrets. Also, in my opinion, rule 15 of the Patent Office relates only to disclosure of information by that Office and in no way relates to the disclosure of information to a grand jury by the prospective patentee.

The Lasting-Heeling Department's outside machine installation reports and supplementals allegedly containing information concerning competition within the industry are relevant and seem reasonably necessary for the grand jury's investigation of this field and should be produced as ordered.

The subpoena dated May, 14, 1947, orders the production of practically the complete files of United relating to the subject matter set out therein. Since the period of time covered by this subpoena is great, extending in some instances over 27 years, and since it will require the examination by United's employees or officers of a very large number of old documents and the exercise of judgment and discretion by them as to whether each such document made at a time when the employee or officer may not have been connected with the company, and of which he has little, or no actual knowledge, I feel that at this time, this subpoena should be limited to minutes, records and correspondence with the parties mentioned therein.

If at a later time the grand jury, after examining those documents should find it necessary to have certain interoffice communications and intra-company documents as now requested, those may be subpoenaed on a showing of their relevancy. However, at this time, it appears that the minutes, reports and correspondence might be sufficient for the grand jury's purposes, and considering the burden placed on the corporation, the demand for the complete file of intracorporation documents which may

not be necessary for the completion of the investigation, is excessive and unreasonable.

In my opinion, United should not be required to produce any documents concerning the following subjects, on the ground of irrelevancy:

1. The organization of the Littleway Company in or about the year 1924.

2. The organization of Hamel Shoe Machinery Company by the Singer Sewing Machine Company.

Paragraph 5(c) describes certain transactions or "purported" transactions concerning which documents are ordered to be produced. In my opinion, the word "purported" is a characterization too indefinite and too uncertain to meet the test of particularity in the description of the documents required. Thus, United will not be required to produce documents relating to any purported purchase, purported assignment, purported sale, or purported license as ordered in paragraph 5(c).

United shall be allowed 3 days from this date to comply with the subpoena dated May 22, 1947. Since the subpoena dated May 14, 1947 requires a large number of old documents, determination of which will require some time, twenty days should be allowed for compliance, with the understanding, as stated by counsel for the government at the hearing, that every reasonable effort will be made to lessen the burden placed on the corporation, even to extending the time for production, if it appears reasonably necessary to do so.

The argument that these subpoenas were improperly issued as later or alias subpoenas, if otherwise valid, is not now maintainable, since no other subpoenas are now outstanding.

 The subpoenas as herein limited are, in my opinion, reasonable and proper and are not violative of the due process clause of the Fifth Amendment.

An order in accordance with this memorandum shall be prepared by the Clerk.