**Petition of BORDEN CO.**

No. 8949.

District Court, N. D. Illinois, E. D.

Jan. 9, 1948.

Howard Neitzert, of Sidley, Austin, Burgess & Harper, all of Chicago, Ill., for Borden Co.

Melville C. Williams, Sp. Asst. to Atty. Gen., for the United States.

BARNES, District Judge.

The petition of The Borden Company to quash a subpoena duces tecum issued out of the office of the clerk of this court and commanding that company to produce before a grand jury of this court on December 12, 1947, certain contracts, agreements, reports, studies, memoranda, notes and other documents, came on to be heard and was heard on Tuesday, December 30, 1947.

The petition of The Borden Company alleges:

"1. The aforesaid subpoena duces tecum thereof and each and every part and paragraph thereof is unreasonable and unnecessarily oppressive and violates the Fourth Amendment to the Constitution of the United States of America.

"2. Said subpoena duces tecum purports to require the production of documents that are not reasonably necessary, relevant or material to any lawful inquiry of the Grand Jury of the United States District Court.

"3. The aforesaid subpoena duces tecum is not limited in its demands to a reasonable period of time.

"4. Said subpoena duces tecum was caused to be issued and served upon your petitioner without reason or cause to believe that the documents described therein will or would show any violation of any law or laws of the United States of America.

"5. The demands of said subpoena duces tecum are and constitute an unlawful persecution and abuse of the power of the Grand Jury by the attorneys for and employed by the Antitrust Division of the Department of Justice of the United States in that said attorneys have heretofore had and availed themselves of all reasonable and necessary opportunity to investigate the business and affairs of your petitioner and to examine and inquire into its books, files and records for all lawful reasons and purposes.

"6. The said subpoena duces tecum is an abuse of the power of the Grand Jury by the attorneys for and employed by said Antitrust Division in that most of the documents described in said subpoena duces tecum have been in the possession of the Grand Jury of this Honorable Court and in the possession of the attorneys for and employed by the Antitrust Division who cause the aforesaid subpoena to issue.

"7. The aforesaid subpoena duces tecum is a part of a general fishing expedition involving the unlawful search and seizure of the books, files and records of your petitioner in aimless and random search for some evidence of violation of law."

Counsel for the petitioner charges: First, that this grand jury was not impaneled to make an investigation of the kind contemplated by the attorneys for the Antitrust Division and that the document described in the subpoena duces tecum are not relevant or material to any lawful inquiry within the jurisdiction of the grand jury and that certain of the documents are privileged. Second, that the subpoena, requiring a search of files over a period of 20 years, is unreasonable because of the period of time covered by its demand. And, Third, that

the subpoena is illegal and void because it is a part of a general fishing expedition into the business and affairs of the petitioner which is, in turn, a part of a general campaign of harassment and persecution of the petitioner—the various elements of this third objection to the subpoena are said to be more definitely stated in paragraphs numbered 4 to 7, inclusive, of the petition.

In the court's opinion, the allegations of the petition and supporting affidavit tending to show innocence and the counter allegations of the Government may, on this inquiry, be disregarded. The inquiry now is not as to guilt or innocence.

On the First contention of petitioner's counsel, that the grand jury that caused the subpoena duces tecum in question to be issued was not impaneled to make an investigation of the kind contemplated by the attorneys for the Antitrust Division and that the documents described in the subpoena are not relevant or material to any lawful inquiry within the jurisdiction of the grand jury and that certain of the documents are privileged. If by this objection it is meant to infer that there are some limitations on the powers of this grand jury not found on the powers of grand juries generally, it may be well to look at the genesis of this jury. On the 9th day of September, 1947, Col. Otto Kerner, Jr., the United States Attorney for this District, presented to this court his petition, wherein he certified that the exigencies of public service and the public interest required the impaneling of a second grand jury for the September, 1947, Term, and wherein he requested that such a second grand jury be called to serve in this Division. Upon the presentation of said petition, this court rendered an order in accordance with the prayer of said petition and therein provided that the venire facias be returnable on September 22, 1947. After the impaneling of the grand jury on the last mentioned date, the court charged the jury as follows:

"Ladies and Gentlemen: On the 9th day of September, this present month, the District Attorney for this District, Col. Otto Kerner, Jr., presented to this court his petition wherein he represented to the court that the exigencies of public service and the public interest required the impaneling of a second grand jury for the September, 1947, term. Because the court reposes confidence in the wisdom of the District Attorney, the court granted the prayer of that petition and on the 9th day of September ordered that summons issue to bring you folks into court. You have come, and you have now been constituted a second grand jury for the September, 1947, term of this court."

The court then proceeded to give to the jury all those general instructions which it is accustomed to give to all grand juries, and it gave to this grand jury no other instructions. The foregoing is detailed only for the purpose of indicating that the court did not attempt by instructions or otherwise to limit the powers of this grand jury. The court will be permitted to interpolate that it very gravely doubts whether it could lawfully, by instructions or otherwise, limit the very great powers of this or any other grand jury. The statute, Sec. 421, Title 28 U.S.C.A., which authorizes the impaneling of this grand jury, does not limit its powers. Accordingly, the court concludes that this grand jury has all the powers of any other grand jury and that the investigation which it has undertaken is within its powers.

It is contended that the reports made by public accountants for The Borden Company, called for by the subpoena duces tecum in question, are privileged. Section 51, Chapter 110½, Illinois Revised Statutes 1947, provides:

"A public accountant shall not be required by any court to divulge information or evidence which has been obtained by him in his confidential capacity as a public accountant."

It is doubtful whether the privilege granted by this section to a public accountant extends to his written report after he has released it, but it is unnecessary for the court to decide whether the privilege created by the section does extend to the report after its release for the reason that Rule 26 of the Federal Rules of Criminal Procedure, 18 U.S.C.A. following section 687, provides:

"The admissibility of evidence and the competency and privileges of witnesses

shall be governed, except when an act of Congress or these rules otherwise provide, by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience."

At common law the reports of public accountants are not privileged. No act of Congress and no one of the Federal Rules of Criminal Procedure provides otherwise. Accordingly, the court concludes that the reports of public accountants are not privileged.

The Second contention of petitioner's counsel, that the subpoena, requiring a search of files over a period of 20 years, is unreasonable because of the period of time covered by its demands, will be considered after the Third contention of petitioner's counsel.

On the Third contention of petitioner's counsel, that the subpoena is a part of a general fishing expedition and of a general campaign of harassment and persecution, counsel calls the court's attention to facts recited in petitioner's supporting affidavit.

During the month of August, 1938, subpoenas duces tecum issued out of the office of the clerk of this court calling upon The Borden Company to produce before the grand jury of this court a large number of files, books, records and other documents. After a denial of a motion by The Borden Company to quash the subpoenas, an informal conference of counsel for the Government and for The Borden Company with the court resulted in an agreement on an order excusing The Borden Company from complying with the more onerous provisions of the subpoenas. Compliance still involved delivering 10 truck loads, approximately 50 tons, of files to the Antitrust Division. It was necessary to strengthen the floor of one wing of this building in order to store these documents. These files were retained by the Antitrust Division for nearly three years. During this time it was necessary for The Borden Company to make copies of many of these books and records in order that it might carry on its business.

On the first day of November, 1938, an indictment was returned by the grand jury, charging 57 persons and corporations, including The Borden Company, with violations of Section 1 of the Sherman Act, 15 U.S.C.A. § 1. This indictment was never brought to trial, but, after pending for almost two years, was, on September 16, 1940, dismissed by agreement.

On this last mentioned date, September 16, 1940, a consent decree was rendered by this court on a complaint theretofore filed by the United States against The Borden Company and certain of other defendants named in said indictment. This consent decree gave the Antitrust Division certain visitorial powers over The Borden Company and other defendants. Concerning this decree counsel for The Borden Company says:

"Those paragraphs of the decree relating to The Borden Company impose only the most general restraints upon The Borden Company—restraints no more specific in their language or effect than the words of the Sherman Act itself.

"However, the decree does contain other terms and provisions which, if enforced, would have been of great and inestimable value and benefit to the general public and to the distributors; provisions which would have eliminated from this market various unfortunate and uneconomic influences and practices which are as obnoxious to The Borden Company as they are obnoxious to the public good.

"The Borden Company entered into this consent decree in good faith and with the expectation that it would be enforced so that it and the general public alike would obtain the benefits and advantages to these prohibitions. However, although The Borden Company has repeatedly demanded that the attorneys for the Antitrust Department enforce this consent decree, the Department has consistently failed and refused to do so. These violations of the terms and spirit of the consent decree have been so open, flagrant and obnoxious that The Borden Company on more than one occasion has had to take independent action in the state courts to enjoin in its own name conduct prohibited by the decree.

"While ignoring open, flagrant violations of the decree by other defendants, the Antitrust Division has shown a lively interest

in the business and affairs of The Borden Company that may be said to come within the shadow of the decree."

Since the rendition of this consent decree and prior to September, 1947, the Antitrust Division made four investigations of the business and affairs of The Borden Company, examined its books and records and interviewed its officers, agents and employees. The latest of these investigations is described in petitioner's supporting affidavit as follows:

"9. On or about the 6th day of September, 1946, The Borden Company received a further demand in writing from one, Wendell Berge, Assistant Attorney General, for access to the books, files and records of The Borden Company. A copy of said demand is attached hereto and marked Exhibit D.

"10. Pursuant to and in conformance with said demand all the files and records of The Borden Company described in said Exhibit D were made available to attorneys for and employed by the said Antitrust Division and stenographic transcripts were made by said attorneys of interviews with officers, agents and employees of The Borden Company. Office space in the general offices of the Chicago Milk Division was set aside for the use of the said attorneys for and employed by the Antitrust Division and for a period of seven months from one to four such attorneys examined The Borden Company's files and records and took the statements of its officers and employees at their leisure and convenience."

The records of this court, the papers in this case, and the unchallenged statements of counsel disclose that The Borden Company has been subjected to almost continuous investigation and prosecution by the Antitrust Division in this District since January 1, 1938. On November 1, 1938, an indictment was returned against The Borden Company in cause No. 31197. This indictment was dismissed by Judge Woodward. Judge Woodward's judgment was reversed by the Supreme Court and the case remanded and settled by consent decree entered on September 16, 1940. On November 1, 1938, another indictment was returned against The Borden Company,

bearing No. 31205. This indictment was dismissed by Judge Sullivan on November 6, 1939. There was no appeal. On March 15, 1942, a third indictment was returned against The Borden Company, being General No. 33197. This indictment has been pending now for nearly 6 years. On March 15, 1942, a fourth indictment was filed against The Borden Company, bearing No. 33198. This case came on for trial before Judge Campbell and a jury and resulted in a verdict and judgment of not guilty entered on January 14, 1944. In 1943, a complaint in equity was filed by the Antitrust Division against The Borden Company, bearing No. 43C704. This complaint was dismissed with prejudice on January 15, 1946. During this same period, the Federal Trade Commission made at least three investigations of the affairs of The Borden Company in this jurisdiction. One of these investigations resulted in the issuance of a complaint which was dismissed by the Commission on its own motion. The other two investigations resulted in no action whatsoever on the part of the Commission.

On September 17, 1947, there was issued out of the office of the clerk of this court a subpoena duces tecum directed to The Borden Company and returnable before a grand jury of this court. In order to comply with the demands of this subpoena, the controller of the Chicago Milk Division of The Borden Company organized a staff of assistants, consisting of two attorneys and approximately 26 employees of the Chicago Milk Division, who devoted a substantial amount of their time over a period of two months to examining the files of The Borden Company in Chicago and to locating and gathering the material described in said subpoena. The files of The Borden Company in its main office in New York City were also examined by employees of that office under the supervision of the secretary of The Borden Company, and apparently all of the material called for by that subpoena in the possession of The Borden Company has been furnished to the grand jury.

Concerning the work required by the subpoena of September 17, 1947, and that required by the subpoena sought to be quashed, counsel for the petitioner says:

"As a matter of fact, I personally know that more than forty people were engaged from time to time in this work, although the job was primarily done by the twenty-six people referred to in the affidavit. The work involved examining the majority of all of the files made and accumulated in the offices of your petitioner in Chicago over a period of the last ten years. Now, the attorneys for the Antitrust Division have caused a new subpoena duces tecum to be issued which would require the representatives of your petitioner to re-examine these files accumulated over a period of the last ten years and to examine in addition a majority of the files accumulated by your petitioner over a period of the preceding ten years—a total span of 20 years.

\*    \*    \*    \*    \*    \*

"Certainly, it cannot be denied that the attorneys with the Antitrust Division are entirely familiar with the books and records and business and affairs of the petitioner. If there is any reason to believe that the documents described in the subpoena here under attack would show any violation of the law, that reason must have been known to the attorneys for the Antitrust Division when the subpoena of September 17, 1947, was caused to issue. However, it was not until The Borden Company, at great trouble and expenses, had produced the documents described in that subpoena that this new subpoena, asking for other documents and records over a period of *twenty* years, was caused to issue."

The subpoena duces tecum, returnable December 12, 1947, which is now sought to be quashed, calls, generally, for the following:

1. All contracts, agreements, and understandings dated subsequent to January 1, 1928, and to which the respondent company is a party, pertaining to a purchase by the respondent company of the business, or part of the business, of any person, firm, partnership, or corporation engaged in pasteurizing, bottling, or distributing fluid milk in the Chicago area.

2. All reports, studies, memoranda, notes, and other documents written during the period January 1, 1928 to date by any director, officer, employee, or agent of the respondent company relating to: a suggested purchase; a planned purchase; negotiations for purchase; or purchase by the respondent company, of the business, or part of the business, of any person, firm, partnership, or corporation engaged in pasteurizing, bottling, or distributing fluid milk in the Chicago area.

3. All records and documents written subsequent to January 1, 1928 and passing between any director, officer, employee, or agent of the respondent company and an officer, director, employee, agent, or representative of a person, firm, partnership or corporation engaged in pasteurizing, bottling, or distributing fluid milk in the Chicago area, and that was either purchased or considered for purchase but not purchased.

4. All reports made by public accountants for the Borden Company during the period January 1, 1940, to date for the Chicago Fluid Milk Division.

5. All Branch Audit Reports for all branches of the Chicago Fluid Milk Division of the Company for the period October 7, 1940, to date.

Concerning the material called for in this subpoena, the affidavit of the Controller of the Chicago Milk Division of The Borden Company states:

"12. The documents described in the aforesaid subpoena duces tecum dated December 9, 1947, a copy of which is attached hereto and marked Exhibit A, to the best of affiant's knowledge and belief, are located in the various files of The Borden Company in its several offices, places of business and storage depots in the cities of Chicago and New York. Affiant is informed and believes that such of the contracts and agreements described in said subpoena as are in existence, and a few miscellaneous papers relating to said contracts and agreements, are lodged in some or all of the approximately 100 files located in the Company's general offices and storage depots in the City of New York; however, very few, if any, of the employees of The Borden Company are familiar with the files or filing systems of The Borden Company, its subsidiaries and divisions over the period of the last twenty years and affiant verily believes that it would require three to four weeks to locate and produce all such contracts and agreements.

"13. Reports, studies, memoranda, notes and other documents described in the aforesaid subpoena duces tecum dated December 9, 1947 (other than the contracts, agreements and miscellaneous papers referred to above) are scattered throughout the files and records of The Borden Company lodged in its various offices, places of business and storage depots in Chicago and New York, that have accumulated over the period of the last twenty years, including all the files and records that have been examined during the past three months to comply with the subpoena duces tecum dated September 17, 1947, the ten truck loads of files held by representatives of the Antitrust Division until July 16, 1941, and files and records examined by attorneys for and employed by the Antitrust Division during the months of October, 1946, to April, 1947, both inclusive, all as more fully stated above."

On the foregoing facts counsel for The Borden Company contend that this subpoena, returnable December 12, 1947, is illegal and void because it is a part of a general fishing expedition into the business and affairs of The Borden Company, which is, in turn, a part of a general campaign of harassment and persecution of The Borden Company.

The attorneys for the Antitrust Division deny any persecution or intent to persecute, and say that repeated investigations do not bring immunity from prosecution to the person, firm or corporation investigated. This last statement is a mere knocking down of a straw man. The Borden Company is not claiming immunity from prosecution; it is merely claiming that it has been and is being subjected to unreasonable searches.

In the light of the facts above set forth, it cannot be denied that the affairs and business of The Borden Company have had the long-continued and repeated attentions of the Antitrust Division and of the grand juries of this court, as well as the attention of the Federal Trade Commission. If the question before the court were that of guilt or innocence, the court might very properly observe that, even if our law did not require the indulgence of the presumption of innocence, one would hardly be warranted in inferring criminality from the mere number of investigations to which the The Borden Company has been subjected, particularly when it is remembered that such investigations have resulted in no convictions and have resulted in one acquital by a court and jury, dismissals of two indictments, and that a fourth indictment has been pending without trial thereof having been had for no less than five years. It might very properly be observed that the large number and long continued investigations, with the results noted, are rather indicative of innocence. But, as has been stated, the question presently is not that of guilt or innocence. While the mere fact that the repeated and long continued investigations of the period from August, 1938, to September, 1947, have eventuated in no conviction of crime does not necessarily mean that they were unreasonable, the court is, nevertheless, constrained to remark that the history of that period being what it is, it is not surprising that The Borden Company should now feel aggrieved and that it is being subjected to unreasonable harassment. However, it is unnecessary for the court now to determine whether the investigations prior to that of the present grand jury were reasonable or otherwise. The very narrow question before the court is: Is the subpoena returnable December 12, 1947, unreasonable in its demands?

The court's respect for the powers of a grand jury is so great that the court says frankly that it would require a clear showing of unreasonableness—of abuse of power —to induce the court to quash a grand jury subpoena. While the court must and does indulge the presumption of innocence, it is possible that earlier grand juries that investigated The Borden Company and their agents may have worked diligently and efficiently and nevertheless failed to uncover and prosecute derelictions that in fact existed, or they may have failed to work diligently or efficiently and consequently failed to uncover and prosecute derelictions that in fact existed. It is even possible that The Borden Company has, by earlier grand juries and their agents, been subjected to unreasonable harassment. If the Second September, 1947, term grand jury believes that there is a possibility such derelictions exist there is no reason that the court can see why it should be impeded in its work by

the failure of its predecessors to do theirs. To hold otherwise would render many grand juries impotent. Public servants must not be limited in their work by the failure of their predecessors in theirs. The court cannot say that the subpoena returnable December 12, 1947, is unreasonable in its demands.

As has been stated, the attorneys for the Antitrust Division have now caused two subpoena duces tecum to be issued and served on The Borden Company in the current investigation of the affairs of that company. The first of these was issued on September 17, 1947, five days before the Second September, 1947, Term grand jury was impaneled, but it has been assumed, and is unquestionably the fact, that the material produced by The Borden Company in response to the demands of that subpoena has been available to the Second September, 1947, Term grand jury. The second subpoena duces tecum issued and served on The Borden Company in the current investigation is that issued December 9, 1947, and returnable December 12, 1947, now sought to be quashed. On the oral arguments on the motion to quash, the attorneys for the Antitrust Division indicated that instead of doing as they had done in 1938, when a subpoena duces tecum was served which caused ten truck loads, approximately 50 tons, of papers to be delivered at this building at one time, they contemplate the issuance of a series of subpoenas duces tecum, each for a portion of the aggregate amount of material that is desired. Counsel for The Borden Company complain, and with cause, that this procedure can subject and is subjecting that company to unnecessary harassment. They say that response to the subpoena of September 17, 1947, necessitated an elaborate search of the files of The Borden Company, that just as that search was completed the present subpoena was issued and it requires another search of the files. How many subpoenas the attorneys for the Antitrust Division contemplate issuing they did not state. The court is of the opinion that before the search required by the present subpoena, that issued December 9, 1947, returnable December 12, 1947, is undertaken by the respondent, its attorneys should be advised by the attorneys for the Antitrust Division in detail (possibly by the issuance of subpoenas returnable at intervals) the aggregate of the material that the attorneys for the Antitrust Division contemplate asking the respondent to produce. If this is done, there need be but one further search of the files of The Borden Company for the present grand jury. It is unfortunate that two searches have been necessary. Conferences between counsel, even in criminal cases and in grand jury investigations, are sometimes helpful and save the time not only of counsel but of parties who may unfortunately be involved.

Finally, the court comes to the Second objection of counsel for The Borden Company, that the subpoena requiring a search of files over a period of 20 years is unreasonable because of the period of time covered by its demands. Considerable of what the court has said on the Third objection, which has already been considered, is pertinent here. The court realizes that the idea that there may be evidence of derelictions in the files of the respondent extending back a period of twenty years is inconsistent with the results to date of the numerous examinations and investigations of the affairs of the respondent which were made during the period from August, 1938, to September, 1947, but if this Second September, 1947, Term grand jury believes, as apparently it does, that there may be evidence of derelictions on the part of the respondent in these old records, the court is not inclined, on the showing made, to excuse their production or to limit the requirements of the subpoena.

It follows from what has been said that the petition of The Borden Company to quash the subpoena duces tecum should be denied. Furthermore, the petition of The Borden Company to limit the demands of said subpoena should be denied, except to the extent heretofore indicated, that is to say, the attorneys for the Antitrust Division shall, forthwith and before a further search is undertaken, communicate to counsel for The Borden Company, in detail, the aggregate of the material they contemplate calling upon The Borden Company to produce for the examination and inspection of the Second September, 1947, Term grand jury.

Counsel may confer upon the form of an order, consistent with this memorandum, and present a draft of such order at 10 o'clock A. M., on Wednesday, January 14, 1948.