Application of **LINEN SUPPLY COS.**

Application of **MASTER COAT, APRON & TOWEL SUPPLY CO., Inc.**

**UNITED STATES v. DOE.**

United States District Court
S. D. New York.

Nov. 20, 1953.

Rosenman, Goldmark, Colin & Kaye, New York City, for Linen Supply Companies. Samuel I. Rosenman, New York City, of counsel.

Matthew H. Ross, New York City, for Master Coat, Apron & Towel Supply Co., Inc.

Zelby & Burstein, New York City, for Laundry Workers International Union, Local No. 284, A. F. of L. Herbert Burstein, New York City, of counsel.

John D. Swartz, Sp. Asst. to the Atty. Gen., Morris F. Klein, Trial Atty., Antitrust Division, New York City, for the United States.

McGOHEY, District Judge.

In an antitrust investigation into the linen supply industry in the New York Metropolitan area the Government caused Grand Jury subpoenas to be served on a large number of companies engaged in that industry, hereafter called the Suppliers, an association of such companies known as Linen Supply Institute of New York, hereafter called the Association, and Laundry Workers International Union, Local 284 AFL, hereafter called the Union. All subpoenas are substantially similar save that those addressed to the Association and the Union demand, in addition, records peculiar to such organizations.

The Suppliers and the Association move to quash or in the alternative to modify. The Union's motion is to quash. It raises questions different from the other motions and will be considered separately, following disposition of the other motions.

The Suppliers are engaged in the business of furnishing linens on a rental basis primarily to local professional establishments, restaurants and retail stores. In 1943 five indictments and two informations charging violations of the antitrust laws were returned in this court against trade associations of linen suppliers and some of their members. Demurrers thereto were sustained on the ground that the allegations as to interstate commerce were insufficient. The indictments were subsequently nolle prossed. In May 1943 four new informations were filed against the same parties. The defendants pleaded nolo contendere and fines were imposed.

From May 1943 until 1949 the industry was under close surveillance by the Department of Justice. It is alleged, and not denied by the Government, that an arbitration agreement was entered into by the Suppliers, with the knowledge of, and indeed after consultation with, the Department of Justice. In 1949 and 1950 the Department conducted a search of the files of five of the Suppliers and the Association. In 1951 questionnaires submitted by the Department were answered by the same companies.

The subpoenas require production of documents covering the period from Jan. 1, 1943 to date except in the case of the six movants who were "file searched" in 1949 and 1950. As to these, documents are required only from Jan. 1, 1949 to date.

The Suppliers and the Association object to paragraph III of the subpoenas on the grounds that it is unreasonable and oppressive in that:

(1) Serious doubt exists as to the jurisdiction of the Grand Jury of the U. S. over the movants herein, none of whom operates in interstate commerce; since compliance with the aforesaid subpoenas would seriously interfere with the business of the movants and would involve an unreasonable burden and expense, the jurisdictional issue should first be determined by the Grand Jury;

(2) The subpoenas are not limited in their demands to a reasonable period of time;

(3) They are so broad, sweeping, vague and indefinite that compliance would be unreasonable and oppressive;

(4) They cover certain documents and records examined by the attorneys for the Antitrust Division of the Department of Justice of the United States, and copies of which are in their possession.

■ The general tenor of the arguments is that since there is a doubt, possibly of long duration, on the part of the Government that the Suppliers are engaged in interstate commerce, since they have cooperated fully with the Government in the past, and since compliance would impose a hardship on their clerical staffs, the subpoenas if not quashed should at least be limited in scope to

documents relevant and material to the jurisdictional question in the first instance. Such a doubt, however, seems to me rather to be a reason for not quashing the subpoenas. A Grand Jury is not limited to investigation of matters over which it has been demonstrated the Court will have jurisdiction. Indeed this doubt may be the very reason why the Grand Jury summoned these parties to testify and to produce such a breadth of material.[1]

■ It is urged that the Court can, and in the exercise of its discretion in this case should, direct the Grand Jury to confine its initial inquiries to the jurisdictional question in the first instance. But the scope of a Grand Jury's "inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime. * * * the identity of the offender, and the precise nature of the offense, if there be one, normally are developed at the conclusion of the grand jury labors, not at the beginning."[2] While it is undoubtedly true that the Court has power to prevent abuse of process by a Grand Jury,[3] mere inconvenience not amounting to harassment does not justify judicial interference with the functions of the Grand Jury.[4] Government counsel on the argument here offered to work out with counsel an arrangement to minimize whatever inconvenience might be involved by compliance with the subpoenas. That should be done promptly. And if the parties desire, the arrangement may be stated briefly in the order to be entered herein. This negatives harassment and I do not find any other indications of abuse. Accordingly I think a sound discretion requires me not to direct the Grand Jury to conduct its inquiry according to any specified order of subjects.

■ The questions of reasonableness as to the period and subjects covered by the subpoena are interrelated and will be considered together. A subpoena duces tecum must be limited to a reasonable period of time and specify with reasonable particularity the subjects to which the desired writings relate.[5] It can be readily agreed that as the time period lengthens so must the particularity increase.[6] Some courts have set ten years as the outside limit[7] and some have quashed subpoenas covering even shorter periods of time.[8] In other cases, however, because of peculiar facts, courts have sustained subpoenas covering much longer periods of time.[9] In all these cases it is recognized that

1. See U. S. v. Women's Sportswear Manufacturers Association, 1948, 336 U.S. 460, 464, 69 S.Ct. 714, 93 L.Ed. 805; In re Black, 2 Cir., 1931, 47 F.2d 542; Application of Texas Co., D.C.Ill., 1939, 27 F.Supp. 847.

2. Blair v. U. S., 1918, 250 U.S. 273, 39 S.Ct. 468, 471, 63 L.Ed. 979; Application of R. C. A., D.C.S.D.N.Y., 1952, 13 F. R.D. 167, 170; see also In re Investigation of World Arrangements, D.C.D.C., 1952, 13 F.R.D. 280, 287.

3. In re National Window Glass Workers, D.C.Ohio, 1922, 287 F. 219, 226; U. S. v. Smyth, D.C.Cal., 1952, 104 F.Supp. 283, 292–293.

4. In re Application of R. C. A., D.C.S.D. N.Y., 1952, 13 F.R.D. 167, 172; In re Petition of Borden Co., D.C.Ill.1948, 75 F.Supp. 857, 863; In re Investigation of World Arrangements, D.C.D.C., 1952, 13 F.R.D. 280, 287.

5. U. S. v. Medical Society, D.C., 1938, 26 F.Supp. 55, 57; see also In re Motions to Quash Subpoenas Duces Tecum, D.C. Cal., 1939, 30 F.Supp. 527.

6. In re United Shoe Machinery Corp., D.C. Mass., 1947, 73 F.Supp. 207.

7. In re Investigations of World Arrangements, D.C.D.C., 1952, 13 F.R.D. 280; In re United Shoe Machinery Corp., D.C. Mass., 1947, 7 F.R.D. 756; In re Eastman Kodak, D.C.W.D.N.Y., 1947, 7 F.R. D. 760.

8. In re United Last Co., D.C.Mass., 1947, 7 F.R.D. 759.

9. In re Application of Radio Corporation of America, D.C.S.D.N.Y., 1952, 13 F.R.D. 167, 18 years; Petition of Borden Co., D. C.Ill., 1948, 75 F.Supp. 857, 27 years.

the facts in each individual case are the determining factors. More important than the formal results in these cases are the tests laid down for determining reasonableness, e. g. the type and extent of the investigation; the materiality of the subject matter to the type of investigation; the particularity with which the documents are described; the good faith of the party demanding the broad coverage; a showing of need for such extended coverage. I think these subpoenas meet these tests.

■ There is here involved an antitrust investigation of the entire linen supply industry in this area. The Suppliers it is true appear for the most part to be small companies. Together, however, they constitute practically the whole of the linen supply industry in the New York Metropolitan area, which embraces part of three states, many millions of inhabitants, and, as admitted by the Suppliers, customers numbering in the aggregate hundreds of thousands. By its nature an antitrust investigation must be more extensive than the ordinary criminal investigation.[10] The twenty subject categories in the subnumbered sections of paragraph III are quite particularized. Moreover, they are all material to an investigation of this sort, since they describe acts which are the normal means of effectuating a violation of the antitrust laws. The good faith of the Government cannot here be questioned. The investigation has been ordered by its chief legal officer, and there is a history of previous offenses by some of those subpoenaed. As to those "searched" in 1949–1950, the time is limited to 3½ years, and only as to those who have not been so "searched" is the time extended to 10½ years, that is, back to the time of the fines. The Government asserts that the roots of the conspiracy extend back into these years immediately following the fines. It is of course permissible to investigate prior

to the period of limitation, in order to show a continuing conspiracy.[11]

■ The subpoena calls for many documents of which the Government already has copies. This I think is unreasonable and such documents need not be produced. If it transpires that the originals are needed later, new subpoenas may be served.

Except as herein indicated the motions of Linen Supply Companies and Master Coat, Apron & Towel Supply Co., Inc. are denied.

### The Union's Motion

This seeks to have the subpoena addressed to the Union quashed. Paragraph II thereof is similar to paragraph III of the subpoena served on the Suppliers and the Association. The Union's charge of unreasonableness as to the period and subjects embraced in paragraph II of its subpoena is sufficiently answered by what has already been said as to paragraph III of the other subpoenas and will not be repeated. The Union urges also that (1) "the subpoena is without force and effect, invalid and improper in that it is addressed to an unincorporated association and said unincorporated association cannot comply therewith except through all of its members who must be served;" (2) "compliance with the subpoena would tend to incriminate each member of the unincorporated association, without according to such members the right to assert Constitutional privileges;" (3) "* * it calls for the production of confidential data and materials which no officer of the Union may lawfully surrender;" (4) "the data sought go beyond anything which the Federal Government under any law, may, can or dares require of trade unions."

The last contention appears to assume that at least some of a labor union's records are always and inevitably beyond reach of judicial process. It is un-

---

10. In re Eastman Kodak, D.C.W.D.N.Y., 1947, 7 F.R.D. 760.

11. In re United Shoe Machinery Corporation, D.C.Mass., 1947, 73 F.Supp. 207.

necessary to consider the validity of that assumption in reaching decision of the Union's present motion and accordingly I do not consider it.

 The Marshal's affidavit that the subpoena was served on the Union's Office Manager is not controverted. Accordingly the contentions numbered (1) and (2) are rejected on the authority of United States v. White, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542. The contentions numbered (3) and (4) are rejected in so far as they are addressed, if they are, to paragraph II of the subpoena. It seems more likely, however, that these contentions are addressed to Par. III of the subpoena, which is as follows:

"III. Such books, records, documents and lists in the possession or control of your union, or *a certified statement prepared therefrom,* for the period from January 1, 1943 to the date of the service of this subpoena, showing:

"a. The name, official capacity, term of office and present residence of each of the officers, directors, trustees, members and officials of boards and committees, business agents, labor relations experts, shop stewards and managerial, executive and advisory personnel of your union;

"b. payments of expenses, salaries, fees, bonuses and other emoluments to any of the foregoing persons and the purpose of each payment;

"c. financial statements, income and expense statements, including initiation fees, dues, fines, penalties and assessments;

"d. monies, gifts, contributions, disbursements, reimbursements and advances, other than wages and salaries, paid or given to your union and any business agent, officer, employee, representative and member;

"e. the number of active members of your union engaged in supplying linen service or laundering linens for linen service suppliers."

 The relevance and materiality to this investigation of the information called for by items a, d and e of paragraph III appear to me to be fairly obvious. And the Union does not point out in what respect they are not, or in what respect it would be "unlawful" for an official of the Union to "surrender" such information if it is available in the Union's records. Neither is it shown in what respect such information constitutes "data * * * which the Federal Government under any law may [not] can [not] or dares [not] require of trade unions." Thus as to items a, d and e of paragraph III, the contentions numbered (3) and (4) are rejected. The data called for in items b and c of paragraph III, however, bear no apparent relation to this investigation. These data relate peculiarly to the internal management and financial affairs of the Union itself and ordinarily would not be expected to include information concerning the employers of the Union's members. The Government made no showing on argument or in its brief as to how such data might or could disclose evidence of antitrust violations by anyone in the linen supply industry. Accordingly the Union's motion is denied except as to items b and c of paragraph III. As to these items it is granted.

 Furthermore item d of paragraph III as it stands is too broad. It will be limited to payments or gifts, if any, by any of the Linen Supply Companies or the Association.