**In the Matter of the GRAND JURY SUBPOENA DUCES TECUM ADDRESSED TO PROVISION SALESMEN AND DISTRIBUTORS UNION, LOCAL 627, A.F.L.–C.I.O.**

United States District Court
S. D. New York.
Nov. 6, 1961.

Felig & Felig, Ashe & Rifkin, New York City, for petitioner. George Rifkin, Elias M. Felig, New York City, of counsel.

Robert M. Morgenthau, U. S. Atty., for the Government. David H. Harris, Ronald S. Daniels, Irving Kagan, John J. Galgay, Attys., Dept. of Justice, of counsel.

HERLANDS, District Judge.

The petitioner, Local 627, Provision Salesmen and Distributors Union, A.F.L.-C.I.O., has moved to quash or modify a subpoena duces tecum addressed to it by a federal grand jury investigating alleged violations of the federal antitrust laws. The grand jury is seeking to determine whether there were unlawful agreements among manufacturers, jobbers, retailers and unions, including Local 627, in the processed meat industry, to fix prices, allocate customers, maintain boycotts and to enforce these restraints (Government's supplemental affidavit, para. 1).

The Local asserts four grounds for its motion: (1) the items sought by the subpoena duces tecum are not relevant to the subject of the grand jury investigation; (2) the subpoena duces tecum demands records covering a period of eighteen years, an unreasonably long period of time; (3) the demand for the production of records is not sufficiently specific and, therefore, places the Local in danger of being held in contempt; and (4) the Local argues that, because it allowed Government agents to examine some of its files for a period of six weeks and then delivered many documents to the grand jury, the subpoena is oppressive and constitutes an unreasonable search and seizure.

A subpoena duces tecum may be so sweeping that it violates the Fourth Amendment's prohibition of unreasonable searches. F. T. C. v. American Tobacco Co., 264 U.S. 298, 44 S.Ct. 336, 68 L.Ed. 696 (1924); Hale v. Henkel, 201 U.S. 43, 76, 26 S.Ct. 370, 50 L.Ed. 652 (1906); McMann v. S. E. C., 87 F.2d 377, 379, 109 A.L.R. 1445 (2d Cir. 1937), cert. denied sub nom. McMann v. Engel, 301 U.S. 684, 57 S.Ct. 785, 81 L.Ed. 1342 (1937). If a subpoena duces tecum does constitute a violation of the Fourth Amendment, the courts may quash or modify it. To avoid such judicial action, the subpoena must be reasonable. Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 208, 66 S.Ct. 494, 90 L.Ed. 614 (1946); Hale v. Henkel, 201 U.S. 43, 76, 26 S.Ct. 370, 50 L.Ed. 652 (1906).

■ The courts have found that reasonableness, in this context, has three components. The subpoena duces tecum may command only the production of things relevant to the investigation being pursued. Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 208–209, 66 S.Ct. 494, 90 L.Ed. 614 (1946); Brown v. United States, 276 U.S. 134, 143, 48 S.Ct. 288, 72 L.Ed. 500 (1928); F. T. C. v. American Tobacco Co., 264 U.S. 298, 306–307, 44 S.Ct. 336, 68 L.Ed. 696 (1923); Hale v. Henkel, 201 U.S. 43, 77, 26 S.Ct. 370, 50 L.Ed. 652 (1960). The subpoena must specify the things to be produced with reasonable particularity. Brown v. United States, 276 U.S. 134, 143, 44 S.Ct. 336, 68 L.Ed. 696 (1928); Hale v. Henkel, 201 U.S. 43, 77, 26 S.Ct. 370, 50 L.Ed. 652 (1906). The subpoena may order the production of records covering only a reasonable period of time. Brown v. United States, 276 U.S. 134, 143, 44 S.Ct. 336, 68 L.Ed. 696 (1928); Schwimmer v. United States, 232 F.2d 855, 863 (8th Cir. 1956), cert. denied, 352 U.S. 833, 77 S.Ct. 48, 1 L.Ed.2d 52 (1956); United States v. Medical Society, 26 F.Supp. 55, 57 (D.D.C.1938); In re Eastman Kodak, 7 F.R.D. 760, 763, 765 (W.D.N.Y.1947).

■ The requirement of relevance is satisfied by a showing that there is a relation between the documents which must be produced and the purpose of the inquiry. Application of Certain Chinese Family Benevolent and District Ass'ns, 19 F.R.D. 97, 101 (N.D.Cal.1956).

■ What is required by way of particularity in describing the things which must be produced is "specification of the documents to be produced adequate, but not excessive, for the purposes of the relevant inquiry." Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 209, 66 S.Ct. 494 (1946). A subpoena apparently meets this standard if it distinguishes between relevant and irrelevant material. Some cases have applied the additional requirement that the subpoena must specify the documents to be produced, or the subjects to which they relate, with enough precision to make compliance with the subpoena possible. Brown v. United States, 276 U.S. 134, 143, 48 S.Ct. 288, 72 L.Ed. 500 (1928); In re Eastman Kodak, 7 F.R.D. 760, 763 (W.D.N.Y.1947); In re Motions to Quash Subpoenas, 30 F.Supp. 527, 531 (S.D.Cal.1939).

■ The facts of each case determine whether the period of time covered by the records sought is reasonable. The period of time with which the records deal should bear some relation to the subject of the investigation. Hale v. Henkel, 201 U.S. 43, 76–77, 26 S.Ct. 370, 50 L.Ed. 652 (1906) [subpoena requiring company to produce records from the date of its organization held bad]; Application of Certain Chinese Family Benevolent and District Ass'ns, 19 F.R.D. 97, 98, 101 (N.D.Cal.1956) [subpoena requiring associations to produce records for the entire period of the associations' existence quashed].

In Application of Linen Supply Companies, 15 F.R.D. 115, 119 (S.D.N.Y. 1953), the court said that the following factors might affect the reasonableness of the period covered: "the type and extent of the investigation; the materiality of the subject matter to the type of investigation; the particularity with which the documents are described; the good faith of the party demanding the broad coverage; [and] a showing of the need for such extended coverage."

■ The subpoena need not be limited to calling for records from a period within the statute of limitations. The grand jury should be able to determine whether there were illegal activities which were begun before the statutory period and continued within it. Application of Linen Supply Companies, 15 F.R.D. 115, 119 (S.D.N.Y.1953); In re United Shoe Machinery Corp., 73 F.Supp. 207, 211 (D.Mass.1947).

■ However, as the period of time covered by the subpoena lengthens, the

particularity with which the documents are described must increase. Application of Linen Supply Companies, 15 F.R. D. 115, 118 (S.D.N.Y.1953); In re United Shoe Machinery Corp., 73 F.Supp. 207, 211 (D.Mass.1947).

The courts have sustained subpoenas duces tecum covering long periods of time: In re United Shoe Machinery Corp., 73 F.Supp. 207 (D.Mass.1947) [27 years]; Petition of Borden Co., 75 F. Supp. 857, 864 (N.D.Ill.1948) [20 years]; Application of Radio Corp. of America, 13 F.R.D. 167 (S.D.N.Y.1952) [18 years].

On the other hand, some cases have held similar periods too extensive: In re Grand Jury Investigation (General Motors Corp.), 174 F.Supp. 393 (S.D. N.Y.1959) [11–30 years]; In re United Last Co., 7 F.R.D. 759 (D.Mass.1947) [14–20 years].

Other courts have expressed the belief that the outer limit should generally be set at ten years: In re Eastman Kodak Co., 7 F.R.D. 760, 766 (W.D.N.Y.1947); In re United Shoe Machinery Corp., 7 F.R.D. 756 (D.Mass.1947).

It is, of course, impossible to define exactly the protection given by the Fourth Amendment without listing the precise facts of each pertinent case. However, Justice Holmes described in general terms what the Fourth Amendment forbids as "a search through all the respondents' records, relevant or irrelevant, in the hope that something will turn up." F. T. C. v. American Tobacco Co., 264 U.S. 298, 306, 44 S.Ct. 336, 337, 68 L.Ed. 696 (1924).

■■■ The rules governing the subpoena duces tecum must be applied realistically. Whether a crime has been committed, who has committed it and what the crime is are normally determined at the end of the grand jury's proceedings, and not at the beginning. Blair v. United States, 250 U.S. 273, 282, 39 S.Ct. 468, 63 L.Ed. 979 (1919). It would cripple the administration of justice to require the grand jury to demand documents with a particularity "which presupposes an accurate knowledge of such papers, which the tribunal desiring the papers would probably rarely, if ever, have." Consolidated Rendering Co. v. Vermont, 207 U.S. 541, 554, 28 S.Ct. 178, 182, 52 L.Ed. 327 (1908).

Moreover, because the grand jury may have to develop evidence for the first time, the requirements of relevance and materiality are certainly less strict in a grand jury investigation than at a trial. Schwimmer v. United States, 232 F.2d 855, 862–863 (8th Cir. 1956), cert. denied, 352 U.S. 833, 77 S.Ct. 48, 1 L.Ed. 2d 52 (1956).

Finally, the grand jury will probably have to inspect a greater volume of documents in an investigation of antitrust law violations, such as the investigation in this case, than in almost any other sort of investigation. Application of Linen Supply Companies, 15 F.R.D. 115, 119 (S.D.N.Y.1953); In re Motions to Quash Subpoenas, 30 F.Supp. 527, 531 (S.D.Cal.1939).

We turn now to a determination of whether the demands for documents made by the subpoena which is under attack in this case meet the requirements imposed by law.

■■■ 1. Paragraph 1(a) of the subpoena commands the petitioner to produce all documents and records concerning the consolidation of the petitioner, Local 627, with another Local consisting of provision jobbers, which consolidation took place in or about the year 1943.

The petitioner bases its chief attack on this item on the ground that the subpoena seeks records from an unreasonably distant time in the past. However, the records relate only to a single specific event. It will be shown below that the event is one relevant to the subject of the investigation. Therefore, it is not unreasonable to require petitioner to produce records covering a period of eighteen years.

The petitioner also argues that the records of the consolidation of two union locals are not relevant to an investiga-

tion of violations of the federal antitrust laws. However, the Government has alleged that the jobbers are independent businessmen (Government's supplemental affidavit, para. 2). The records of the consolidation are, therefore, relevant to the existence of a combination of independent businessmen or of independent businessmen and the Local.

2. Paragraph 1(b) of the subpoena requires petitioner to produce all documents and records concerning anything of value transferred to the Local or its agents by anyone engaged in an industry in which any member of the Local is employed or in which any jobber-member of the Local is engaged, during the eighteen-year period from the consolidation to the date of the service of the subpoena.

The Local alleges that these records are not relevant to the subject of the grand jury investigation. However, if there was an illegal conspiracy between producers and the Local, payments by the producers to the Local may have been used to enforce the conspiracy and may have constituted acts in furtherance of it. The records are, therefore, relevant to the alleged violations of law which the grand jury is investigating.

The petitioner also argues that this paragraph of the subpoena lacks specificity and requires records covering too long a period of time.

To require petitioner to produce all records of the specified payments made to it would force the petitioner to make a thorough search of its records for the past eighteen years to determine which records, if any, must be produced. This would cast too great a burden upon the petitioner. Accordingly, the petitioner should be required to produce the records of payments made only during the ten-year period from June 30, 1951 through June 29, 1961, the date upon which the subpoena in this case was issued. Modification of this paragraph of the subpoena to limit its coverage to ten years will substantially reduce the burden upon the

petitioner, while allowing the grand jury to cull information from records for a period beyond that of the five-year statute of limitations, 18 U.S.C. § 3282.

Moreover, the modification will be without prejudice to a new subpoena which indicates the records required with greater specificity. Since an examination of the records of payments made during the past ten years will probably reveal the names of payors and payees and the consideration or occasion for any payments, the grand jury may obtain information which will allow it to make requests for older records with greater particularity.

The modified paragraph of the subpoena is sufficiently specific to allow the petitioner to determine, without unreasonable efforts, what records it must produce. The petitioner has pointed out, however, that the terms of the subpoena would include records of checked-off dues. In the Government's supplemental affidavit in opposition to the petitioner's motion, the Government conceded that the grand jury was "not interested in monies paid to the Union by way of 'check off' for dues pursuant to the terms of collective bargaining agreements" (Government's supplemental affidavit, para. 3). The subpoena should, therefore, be modified to exclude specifically records of such dues check-offs.

3. Paragraph 2(a) of the subpoena requires the petitioner to produce all books of account which concern the consolidation of the petitioner with the Local consisting of jobbers, referred to in paragraph 1(a). The petitioner makes the same objections to this paragraph as it made to the previous paragraph which was concerned with the consolidation. For the reasons given in the discussion of paragraph 1(a), paragraph 2 (a) is sufficient.

4. Paragraph 2(b) orders petitioner to produce all books of account which concern the assessment of any fine or other penalty against any member of the Local during the period from the

consolidation to the date of service of the subpoena, together with the rule of the Local governing the fine or penalty.

The petitioner alleges that this item is not relevant to the inquiry. However, trade associations and other groups have sometimes enforced illegal conspiracies to fix prices or to restrict competition by the imposition of fines upon their members. The fines imposed by the Local upon its members are, therefore, relevant to an inquiry into violations of the antitrust laws.

The petitioner also claims that paragraph 2(b) is unreasonable as to time and is not sufficiently specific. Although paragraph 2(b) requires records covering a period of eighteen years, the records concern only one limited topic—fines imposed by the Local upon its members. Because the subject of the records is so limited, it should not require an exceptional effort to locate the desired documents. The records are also relevant to the inquiry. Therefore, it is not unreasonable or oppressive to require the records for a period of eighteen years.

The paragraph is sufficiently specific. The paragraph unambiguously informs the petitioner what records it must produce.

■ 5. Paragraph 2(c) orders the petitioner to produce all books of account and correspondence relating to payments made to the Local's welfare fund for the account of any of its jobber members during the period from the consolidation in or about the years 1943 to the date of the service of the subpoena.

Welfare fund payments may have been manipulated to enforce a conspiracy. Whether or not payments were made for the account of jobber members may indicate whether the jobbers were employees or independent businessmen. The records, therefore, are relevant.

Objections to the specificity of paragraph 2(c) or to the period of time it covers are not well founded. Although the period of time covered is extensive, the subject to which the documents re-

late is narrowly and clearly limited. Unreasonable efforts will not be required to find the documents, and the petitioner should be able to respond to the subpoena.

■ 6. Paragraph 2(d) of the subpoena requires the petitioner to produce all books of account and all correspondence relating to the moving of the Local's records to a new office or to the storage of the records.

Explanation of this item requires a further statement of facts.

In March 1961, the Government served upon the petitioner, a subpoena duces tecum which was returnable April 10, 1961 (Petitioner's affidavit, para. 2; Government's affidavit, para. 3). The subpoena demanded production of certain Local records dating from January 1, 1943 to the day the subpoena was served (Government's affidavit, para. 4). Included in the documents ordered to be produced were the membership of the Local and the minutes of the Local's Executive Board (Petitioner's affidavit, para. 2; Government's affidavit, para. 5). The Local failed to produce the minutes of its Executive Board and its membership lists for the years 1943 through 1954 (Government's affidavit, para. 5). The Local claimed that the reason it failed to produce these records was that they had probably been mislaid when the Local moved its offices in 1960 (Government's affidavit, para. 5).

The documents concerning the transfer of the Local's records would obviously be helpful in determining the whereabouts of the records not produced pursuant to the demands of the March 1961 subpoena.

The Federal Rules of Civil Procedure permit a party to take depositions and to discover papers which relate to the location of books and documents. Federal Rules of Civil Procedure, Rules 26(b), 34, 28 U.S.C. The grand jury must also have the power to discover the location of relevant documents. It follows that the items ordered to be produced by paragraph 2(d) are relevant to the grand jury's investigation.

■ 7.   Paragraph 2(e) requires petitioner to produce charges, expense accounts and reservations for hotels, halls, meeting rooms, and transportation of the business manager and organizers of the Local and all related correspondence and cancelled checks, during the period from the consolidation to the date of the service of the subpoena.

The documents may reveal the time, place, reasons for and participants in meetings with the Local's business manager and organizers. Such information clearly may have importance in an investigation of the formation of a conspiracy. Paragraph 2(e), therefore, satisfies the requirement of relevancy.

Again, the documents to be produced cover a period of eighteen years. However, the only records which the Local must produce covering this span of years are certain records concerning the activities of certain individuals, the Local's business manager and organizers. It will not impose an unreasonable burden upon the Local to locate and produce these records. Moreover, the language of the subpoena is sufficiently specific to inform the Local what documents it must produce.

■ 8.   The petitioner claims—for the reasons that (1) a subpoena was served on it before the one involved in this case; (2) it allowed Government agents to examine its files for six weeks; and (3) it then delivered many documents to the grand jury—the new subpoena is oppressive and constitutes an unreasonable search and seizure.

The facts are these: in response to the subpoena served on it in March 1961 (Petitioner's affidavit, para. 2), the petitioner gave the Government some documents on April 10 and April 21, 1961 (Petitioner's affidavit, para. 3 and Exhibits A and B). However, the petitioner failed to comply completely with the subpoena (Government's affidavit, para. 5). The Government, therefore, obtained an order requiring petitioner to show cause why its books and records should not be im-

pounded to secure the production of the documents called for by the subpoena (Petitioner's affidavit, para. 4; Government's affidavit, para. 7). In lieu of showing cause, the petitioner agreed to allow attorneys for the Department of Justice and Special Agents of the F. B. I. to search its records (with the exception of its financial records) to discover which documents were called for by the subpoena (Petitioner's affidavit, para. 6; Government's affidavit, para. 8).

Government agents made a search of the Local's files which lasted six weeks (Petitioner's affidavit, para. 6; Government's affidavit, para. 10). As a result of the search, the Government discovered one hundred and forty-six documents which the Local had not previously produced, but which it then gave to the Government (Petitioner's affidavit, para. 6; Government's affidavit, para. 11).

Following this, and in July 1961, the Government served upon petitioner a second subpoena, dated June 29, 1961 (Petitioner's affidavit, para. 7; Government's affidavit, para. 3). This is the subpoena which is here at issue.

There is little to commend petitioner's argument which is based on these facts. The fact that the Government made a search of the petitioner's records does not render the subsequent subpoena oppressive. The search was limited because the parties agreed to exempt the petitioner's financial records. These records are one of the main subjects of the second subpoena.

Moreover, the purpose of the examination of petitioner's files was limited to the discovery of documents called for by the first subpoena.

Finally, the petitioner consented to the search. This contradicts the petitioner's argument that the search made oppressive a subpoena which was otherwise reasonable. This leaves petitioner only its claim that service of the two subpoenas upon it is somehow unreasonable.

■   However, the fact that the petitioner was served with one subpoena does

not give it immunity from complying with the reasonable demands of a subsequent subpoena. Petition of Borden Co., 75 F.Supp. 857 (N.D.Ill.1948).

The petition to quash or modify is denied, except in the respects specified. Settle order on notice.