In the Matter of the GRAND JURY INVESTIGATION (GENERAL MOTORS CORPORATION).

United States District Court
S. D. New York.
July 17, 1959.

Willis L. Hotchkiss, Chicago, Ill., George D. Reycraft, Larry L. Williams, Washington, D. C., E. Winslow Turner, William C. McPike, Robert A. Hammond, III, Alan S. Ward, Washington, D. C., Dept. of Justice, for the United States.

Cravath, Swaine & Moore, New York City, for General Motors Corp., Henry M. Hogan, Bruce Bromley, George B. Turner, New York City, of counsel.

McGOHEY, District Judge.

General Motors has moved to quash a subpoena duces tecum which was caused to be issued by Government attorneys commanding the corporation to appear before a grand jury in this district to testify and give evidence in regard to "an alleged violation of the federal antitrust law"; and to produce "documents and items" described in an attached schedule. The latter covers 13 legal size pages and consists of 16 numbered paragraphs most of which are subdivided into sub-paragraphs ranging in number from 2 to 18.

The motion is granted.

Whether, as counsel for the corporation asserts, a subpoena duces tecum of such scope as this is without precedent in antitrust litigation need not be decided. But certainly it is unprecedented in the experience of the writer. What is demanded is a vast volume of records covering in minute detail practically every internal and external aspect of the corporation's widespread activities except labor relations, for varying periods of which the shortest is 11 years and the longest is 30 years; and in addition extensive detailed data as to the production, financial standing and "profitability and prospects" of unidentified "competitors in each product field."

Among the papers called for are what are designated as "policy documents," a term which is defined in the subpoena as follows:

" 'Policy Documents' are all originals, copies, microfilms, tape recordings, and reproductions of any kind of:

"1. Minutes and records of the Board of Directors and all committees and sub-

committees thereof and all reports, minutes, recommendations, surveys, studies, financial records and communications and records of any kind going to, coming from or retained by such Board, or by any of its committees or subcommittees, or by any members thereof.

"2. All reports, minutes, memoranda, recommendations, surveys, studies, financial records and communications of any kind received by, prepared by, for, or on behalf of, or transmitted by or on behalf of the general manager or president, as the case may be, of any division or subsidiary of the Corporation, the committees and subcommittees of each such division or subsidiary and the members thereof.

"3. All reports, memoranda, recommendations, surveys, studies, financial records and communications and records of any kind received by, prepared by, for, or on behalf of, or transmitted by or on behalf of any officer of the Corporation who functions on behalf of the Corporation as a whole or who is a group executive." [1]

On Argument, the Government's attorney consented to modify the foregoing by eliminating "members thereof" from paragraphs 1 and 2. It developed on argument that a "policy document" is every piece of paper, however informal, relating to any activity covered by the subpoena, which ever came to the attention of any member of the boards or committees or any of the officials named in the definition, without regard to whether the contents of the paper were approved or rejected. The corporation has 44 operating divisions and subsidiaries. Each of these has its own hierarchy of managing officials who from time to time serve on various standing or special committees formed to study matters of business policy and practice in their own or other divisions.

The corporation's board of directors likewise work largely through several committees made up of board members and numerous corporate officers who are not directors.

The subpoena itself must be read and studied to appreciate the extraordinary breadth of the demand for "policy documents." It includes, for example, those relating to "products" produced by the corporation or purchased by it from others. The corporation's "products" range from small mechanical parts such as screws, bolts and nuts, through a wide range of machine tools to the following "products" and each of their multitudinous parts: engines, passenger cars, trucks, railroad locomotives, earth moving machinery, refrigerators and other electrical household appliances. The corporation's general counsel asserts under oath that, to secure the "policy documents" demanded for the specified period from its Pontiac Motor Division alone would require a search by responsible personnel of 30,000 file drawers. This assertion is not denied by Government counsel. They merely argue that they "hardly believe" top management officials would concern themselves with any but "major" products, a term they do not define. This argument, however, is contradicted by the subpoena which these same counsel have caused to be issued. That is not limited to "major" products. It includes all. I accept the sworn statement of the corporation's general counsel and find accordingly. It is a fair inference that searches of proportionate magnitude would be required in the other numerous divisions of the corporation, and I so find.

As appears from the subpoena, copies of many of the demanded documents have heretofore been produced in prior and even presently pending litigations. The Government, however, does not

---

[1] Only one of unmarked multiple identical copies need be produced. But any such copies bearing notations relevant to the subject matter must be produced. Moreover if any such documents have heretofore been produced in any of four named suits by the Government against General Motors beginning in 1941, they need not be produced. However, the corporation is left to discover what documents the Government has already received.

specify which of these are now excluded from the demand but puts on the corporation the burden of determining that.

It is settled law that a demand for production of documents by subpoena must be reasonable.[2] I hold that this subpoena which requires production of practically every paper outside of routine correspondence relating to every phase of the corporation's affairs, in an unlimited exploratory investigation such as is here frankly proposed, "whose purposes and limits can be determined only as it proceeds,"[3] is unreasonable. It will be quashed.[4]

In view of what has been said, it is unnecessary to pass now on the corporation's contention that in any event the Government is misusing the grand jury process to discover evidence to support a civil suit.

Government counsel assert they have received recent complaints of possibly illegal practices by the corporation in certain specified areas of business. The grand jury, of course, may investigate these as well as any other possible criminal violations. But surely it is not inevitably necessary in such investigations or for the prosecution of any criminal charges that may result, that proof of conduct 30 years ago be produced. There is, after all, a statute of limitations for criminal offenses against the antitrust laws. Moreover it is never necessary in order to prove a course of conduct, to show each and every act in one's history. This, of course, is as true of an antitrust prosecution as of any other.

The court will not now undertake to prescribe limits for the proposed investigation. But whatever subpoenas are issued must conform to constitutional standards. Moreover Government counsel are advised to consider Judge Wyzanski's observations and decision in United States v. United Shoe Machinery Corporation[5] with respect to what he described as the "type of extravagant presentation which has come to plague the field of anti-trust law."

The motion is granted and the instant subpoena is quashed.

So Ordered.

---

2. Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746; Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652.

3. See McMann v. Securities and Exchange Commission, 2 Cir., 87 F.2d 377, 379, 109 A.L.R. 1445.

4. See In re United Shoe Machinery Corporation, D.C., 6 F.R.D. 347.

5. D.C., 110 F.Supp. 295, 299.