UNITED STATES of America,
Plaintiff,

v.

The INTERNATIONAL NICKEL COMPANY OF CANADA, Limited, and The International Nickel Company, Inc., Defendants.

United States District Court
S. D. New York.

March 30, 1962.

Joseph J. Gercke, Sp. Asst. to Atty. Gen., Washington, D. C., for plaintiff.

Sullivan & Cromwell, New York City, Inzer B. Wyatt and Michael Cooper, New York City, of counsel, for defendants.

METZNER, District Judge.

This is a motion by the Government for interpretation and enforcement of a provision of a consent judgment entered in this court in 1948, in a case brought under sections 1 and 2 of the Sherman Act, 26 Stat. 209, as amended, 15 U.S.C.A. §§ 1, 2, involving certain nickel products and nickel-bearing material. The motion is predicated upon paragraph X of the judgment which provides that

"Jurisdiction of this cause is retained for the purpose of enabling only the Attorney General or Inco Ltd. or Inco Delaware to apply to the Court at any time for such further orders and directions as may be necessary or appropriate for the construction or carrying out of this judgment. * * *"

The present controversy is as to the proper interpretation of paragraph VII of the judgment, which provides the means of policing the judgment. The pertinent part of that paragraph reads as follows:

"For the purpose of securing compliance with this judgment and for no other purpose, duly authorized representatives of the Department of Justice shall, upon written request of the Attorney General or an Assistant Attorney General, and on reasonable notice to the defendants, be permitted, subject to any legally recognized privilege (1) access, during the office hours of Inco Delaware, to all its books, ledgers, accounts, correspondence, memoranda and other of its records and documents in its possession or under its control relating to any matters contained in this judgment; (2) access at reasonable times to such records and documents of Inco Ltd. as may be then located in the United States in the possession or under the control of Inco Ltd. relating to any matters contained in this judgment. * * *"

The Attorney General has designated representatives of the Federal Trade Commission as representatives of the Department of Justice pursuant to this paragraph. On August 8, 1961, two Federal Trade Commission investigators appeared at the offices of the defendants with a written notice that the investigation was being made, and a request for access to certain documents set forth in an appendix.[1] It should be noted that

1. The important items in issue here are 5 and 6, which read as follows:

"5. Access to, for the period from 1957 to 1961, all annual reports, minute

books, reports of the President, Board of Directors, Executive, Administrative and Operating Boards or Committees of The International Nickel Company, Inc., in-

the request demands access to material "including but not confined to" the categories set forth.

The defendants contend that they have the right to make the initial selection of those documents that they conceive relate to matters contained in the judgment and to present only these to the Government. They state that such matters constitute a small fraction of their business and that the records relating to these matters constitute a similarly small portion of the total records. They assert that it could not have been intended that the Government have a right to search through all their records seeking those relative to the judgment.

The Government's position is that it does not want to see, inspect or copy all documents of the defendants. "It does, however, want access to 'all' such documents and files as are necessary to insure that all relevant documents have been produced." The Government interprets the provision in question as granting to it the right to be present when files are examined, to see the documents that defendants consider irrelevant, and, if necessary, to challenge determinations by the defendants of nonrelevancy.

Defendants further assert that this motion is premature, since there is no evidence that they will not produce all the relevant records. This argument misses the point of the application, which is who shall determine which documents will be produced. In any event, the plain language of the decree states that either party may apply "at any time for such further orders and directions as may be necessary or appropriate for the construction * * * of this judgment". What is requested on this motion is plainly a "construction" of the judgment.

Section 6(c) of the Federal Trade Commission Act, 15 U.S.C.A. § 46(c), provides:

"Whenever a final decree has been entered against any defendant corporation in any suit brought by the United States to prevent and restrain any violation of the antitrust Acts, [the FTC shall have power] to make investigation, upon its own initiative, of the manner in which the decree has been or is being carried out, and upon the application of the Attorney General it shall be its duty to make such investigation."

The letter from the Attorney General to the Chairman of the Federal Trade Commission, referring this matter to the Commission, while designating the Federal Trade Commission as his representative under the provisions of the judgment, also requested investigation under this section, which he states has been "virtually unused since its enactment in 1914." I presume such comment is made

cluding all motions and resolutions made or offered and action taken thereon at any and all meetings.

"6. Access to, for the period *1957* to *1961*, all records, ledgers, contracts, correspondence, memoranda of telephone conversations and communications, and writings of any other nature, transmitted or received by The International Nickel Company, Inc., its officers, directors, employees, agents and representatives thereof, including but not confined to those referring and relating, directly or indirectly, to any of the following:

"(a) classifications of rolling material

"(b) inquiries about rolling material

"(c) requests for purchase of rolling material

"(d) orders for rolling material

"(e) offers to sell rolling material

"(f) prices and terms of rolling material sales

"(g) sales off scale from the then established or then prevailing prices or pricing formulae

"(h) rejections of requests and orders

"(i) conditions and restrictions on use, sale or marketing of rolling mill products

"(j) prices, terms and conditions for consumer sales

"(k) computations and formulae for pricing non-commercial rolling material

"(l) total quantity of rolling material used by Inco Delaware for production of rolling mill products

"(m) quantity of rolling material marketed, distributed and sold to rolling mill producers

"(n) allocation of rolling materials

"(o) conditions, limitations and restrictions upon foreign supply sources for nickel-bearing materials, rolling material and rolling mill products."

in connection with referrals by the Attorney General and not voluntary investigations by the Federal Trade Commission.

Section 9 of the act, 15 U.S.C.A. § 49, provides, *inter alia*, that for the purpose of section 6,

> "the commission, or its duly authorized agent or agents, shall at all reasonable times have access to, for the purpose of examination, and the right to copy any documentary evidence of any corporation being investigated or proceeded against * * *."

No case has been cited to me, and I find none, which interprets section 9 to grant an unlimited right of inspection of corporate documents.[2] Where subpoenas are concerned it has been held that a corporation is entitled to protection against unreasonable searches and seizures afforded by the fourth amendment. Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L. Ed. 652 (1906); In the Matter of the Grand Jury Investigation (General Motors Corp.), 174 F.Supp. 393 (S.D.N.Y. 1959); *cf.* Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920). It is urged that if section 9 granted such an unlimited power, it would be unconstitutional as authorizing an unreasonable search and seizure.[3] However, determination of this question on this motion is unnecessary. The notice of motion served by the Government asks only for interpretation of the access provisions contained in the judgment which was entered on agreement of both parties. Neither the applicability nor the interpretation of section 9 is involved in the issue before the court.

The parties have adverted to a multitude of decisions on the scope of the investigative powers of administrative agencies and the reasonableness of subpoenas issued in conjunction therewith, and by grand juries.[4] By 1946 it was settled that orders by administrative agencies for production of relevant documents would be upheld if the investigation was for a purpose authorized by Congress, within the power of Congress to authorize.[5]

However, we are not concerned with "scope" and "relevancy" because the parties have defined those terms when defendants granted access to all books, etc. "relating to any matters contained in this judgment." What really concerns us is

2. In Hunt Foods and Industries, Inc. v. F. T. C., 286 F.2d 803 (9th Cir.), cert. denied, 365 U.S. 877, 81 S.Ct. 1027, 6 L. Ed.2d 190 (1960), claim was made that the relief granted the Commission by the lower court in an application for enforcement of a section 9 subpoena was too broad because it provided for access to the manufacturer's files. The Court of Appeals pointed out that no such right was granted nor contended for by the Commission, and specifically upheld the order because it did not provide for access.

3. In F. T. C. v. American Tobacco Co., 264 U.S. 298, 44 S.Ct. 336, 68 L.Ed. 696 (1924), the Court refused to discuss the question, stating that "nothing short of the most explicit language would induce us to attribute to Congress that intent." 264 U.S. at 306, 44 S.Ct. at 337.

The Court in Hale v. Henkel, supra, 201 U.S. at 77, 26 S.Ct. 370, specifically reserved the question whether a visitorial examination of the books of a corporation, if authorized by Congress, would violate the fourth amendment. *But cf.*, upholding a general authorization to the Attorney General of the state of incorporation, pursuant to visitorial powers, to search through all the books of a corporation, Humble Oil & Refining Co. v. Daniel, 259 S.W.2d 580 (Civ.App.Tex.), cert. denied, 347 U.S. 936, 74 S.Ct. 631, 98 L.Ed. 1086 (1954).

4. The investigatory functions of grand juries and administrative agencies are analogous. United States v. Morton Salt Co., 338 U.S. 632, 642, 643, 70 S.Ct. 357, 94 L.Ed. 401 (1950); I Davis, Administrative Law § 3.04, at 176–79 (1958).

5. Oklahoma Press Pub. Co. v. Walling, 327 U.S. 186, 206–209, 66 S.Ct. 494, 90 L.Ed. 614 (1946); Fleming v. Montgomery Ward & Co., 114 F.2d 384 (7th Cir.), cert. denied, 311 U.S. 690, 61 S.Ct. 71, 85 L.Ed. 446 (1940). Accord, United States v. Morton Salt Co., supra, 338 U.S. at 652–653, 70 S.Ct. 357. See generally I Davis, Administrative Law § 3.04–.06 (1958).

the manner of compliance with a demand within the terms of the judgment. While the Government states that it wants only relevant documents, its demand to participate in selecting such documents must lead to a situation where it will have "access" to irrelevant documents. Could the parties have intended such broad power by the wording of the consent judgment?

There has been no decision defining precisely what is meant by "access." If we look to section 9 for some guidance on this problem, we find that its legislative history indicates that Congress intended to confer upon the Federal Trade Commission unlimited inspection powers.[6] However, as indicated above, there has been no ruling on whether such powers would be unconstitutional in view of the fourth amendment. It is perhaps significant that in its argument on appeal in F. T. C. v. American Tobacco Co., supra, ten years after the enactment of section 9, while the Government contended that visitorial powers contained in section 9 comprehend more than the subpoena power, it sought only inspection of relevant books and papers at the offices of the corporation. 264 U.S. at 300, 301–302, 44 S.Ct. 336.

The most nearly analogous procedure is that followed when a subpoena is issued. The party subpoenaed can challenge the relevancy of documents requested either by moving to quash the subpoena or by refusing to produce those he considers irrelevant. In the latter case the party issuing the subpoena applies to the court for enforcement, and a judicial determination of relevancy follows.

All the cases emphasize that only production of documents relevant to the inquiry may be compelled. United States v. Morton Salt Co., supra, 338 U.S. at 652, 70 S.Ct. 357; Oklahoma Press Pub. Co. v. Walling, supra, 327 U.S. at 208–209, 66 S.Ct. 494; F. T. C. v. American Tobacco Co., supra, 264 U.S. at 306–307, 44 S.Ct. 336; Fleming v. Montgomery Ward & Co., supra, 114 F.2d at 391–92; Montship Lines, Ltd. v. Federal Maritime Bd., 295 F.2d 147 (D.C.Cir. 1961); Hellenic Lines Ltd. v. Federal Maritime Bd., 295 F.2d 138 (D.C.Cir. 1961). Obviously irrelevant documents may not be required to enable the demanding agency to determine what is relevant. As Mr. Justice Holmes said in the American Tobacco case,

"The analogies of the law do not allow the party wanting evidence to call for all documents in order to see if they do not contain it. * * * For all that appears the corporations would have been willing to produce such papers as they conceived to be relevant to the matter in hand." 264 U.S. at 306–307, 44 S.Ct. 336, 337.

In United States v. Bausch & Lomb Optical Co., 321 U.S. 707, 64 S.Ct. 805, 88 L.Ed. 1024 (1944), the district court included in the judgment entered after trial in a Sherman Act case a provision substantially identical with paragraph VII of the judgment in the instant case. The Court held that equity had constitutional power to insert such a provision in a decree, since the federal government can exercise visitorial powers.[7] The Court stated that the provision in question "compels the disclosure only of papers relating to the matters contained in the judgment." 321 U.S. at 727, 64 S.Ct. at 816. If the defendant was, under that provision, required to *disclose* only relevant papers, it seems clear that the Government was not to have the power to see

---

6. 51 Cong.Rec. 11448 (remarks of Mr. Cummins); *ibid.,* (remarks of Mr. Gallinger); *id.,* at 8845–46 (remarks of Mr. Covington, Chairman of the House Subcommittee); see Handler, The Constitutionality of Investigations by the Federal Trade Commission: II, 28 Colum.L.Rev. 905, 918 (1928); Jouett, The Inquisitorial Feature of the Federal Trade Commission Act Violates the Federal Constitution, 2 Va.L.Rev. 584 (1915).

7. United States v. Bausch & Lomb Optical Co., supra, at 726–727, 64 S.Ct. 805; United States v. Louisville & N. R.R., 236 U.S. 318, 35 S.Ct. 363, 59 L.Ed. 598 (1915); Wilson v. United States, 221 U.S. 361, 382–384, 31 S.Ct. 538, 55 L.Ed. 771 (1911); Hale v. Henkel, supra, 201 U.S. at 75, 77, 26 S.Ct. 370; see Note, 30 Colum.L.Rev. 103 (1930).

irrelevant papers as well, in order to determine relevancy.

The decree in the instant case clearly imposes the standard of relevancy, since it provides access only to documents "relating to matters contained in this judgment." Nothing has been shown to indicate that the procedure to be followed in complying with a demand for "access" should be different from that in the subpoena cases, or that the parties intended to provide for the broad grant of power contended for by the Government.

I therefore conclude that the Government should not have the right to be present when the defendants determine which documents shall be furnished under paragraph VII of the judgment. By an examination of the papers that defendants consider relevant, and through an examination of witnesses, the Commission may determine whether its request has been complied with and seek appropriate relief at that time. So ordered.